CERVECERÍA CORONA, INC., Petitioner, v. MINIMUM WAGE BOARD OF PUERTO RICO, Respondent; ASOCIACIÓN DE INDUSTRIALES DE PUERTO RICO, Amicus Curiae. ASOCIACIÓN DE PRODUCTORES DE RON DE PUERTO RICO, Petitioner, v. MINIMUM WAGE BOARD OF PUERTO RICO, Respondent; ASOCIACIÓN DE INDUSTRIALES DE PUERTO RICO, Amicus Curiae.

Nos. O-69-138, O-69-141.          Decided March 12, 1970.

*Cohen & Lespier* for the Asociación de Productores de Ron de Puerto Rico. *Beverley, Rodríguez, Estrella & Pesquera* for the Cervecería Corona, Inc. *Walter Rivera Díaz* and *Ismael Soldevila* for the Minimum Wage Board of Puerto Rico. *Rafael Martínez Álvarez, Jr., Rafael Martínez Álvarez, III,* and *José A. Fernández Paoli* for the Asociación de Industriales de Puerto Rico, Amicus Curiae.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Cervecería Corona, Inc., and Asociación de Productores de Ron de Puerto Rico, in representation of all the enterprises engaged in the production of rum, challenge the validity of the First Revision (1968) of Mandatory Decree No. 72, applicable to the alcoholic beverage and industrial alcohol industry, approved by the Minimum Wage Board of Puerto Rico on May 6, 1969. Said decree went into effect on May 26, 1969, with the exception of its provisions concerning minimum wages, vacation and sick leave contained in Arts. II, III, and IV, respectively, which are retroactive to February 6, 1969, pursuant to § 14 of the Minimum Wage Act, as amended by Act No. 116 of June 21, 1968, 29 L.P.R.A. § 245m (1968 Supp. at p. 42).

The revision sought is intended to procure the annulment of (a) the provisions granting vacation and sick leave to the employees of the industry,[1] and (b) the inclusion of the

---

[1] *"Article III—Vacations*

"Every employee shall be entitled to vacation leave with full pay effective when he begins to enjoy it, at the rate of the following workdays in which he has worked at least the following hours:

| "Days per Month | Hours Worked |
| --- | --- |
| 1¼ | 112 or more |
| ½ | 60 to 111 |

"Any employee who works less than sixty (60) hours in any month will not accrue any vacation leave during that month. Said vacation leave shall be taken consecutively by the employee and shall be granted annually in such a way as not to interrupt the normal operation of business, to which end the employer shall establish the corresponding vacation schedule. The employee shall not request vacation leave until he has accumulated them for a year. Through written agreement between employer and employee, vacation leave may accrue for more than a year, but never for more than two. In case the employee ceases in his work, the employer shall pay him the total thus far accumulated, although for less than a year. If the vacation leave shall exceed the maximum of two years herein authorized the employer shall also pay him twice (2) the corresponding wages for the period in excess of said two years. If the wage has not been stipulated by days or longer periods, the wages corresponding to each day of vacation shall be computed by multiplying by eight (8) the highest regular wage rate per hour received by the employee during the month to which the vacation corresponds. At the employee's own choice, the vacation leave may

traveling salesmen among the employees covered by the decree, except as to the fixing of minimum wages.[2] With respect to Cervecería Corona, Inc., its objection is limited to the granting of vacation and sick leave at the rate of one-half day for each month in which the employee has worked from 60 to 111 hours, because this alters the provision, with respect to these rights, in Art. VII (b) and (c) of Mandatory Decree No. 24, 29 R.&R.P.R. § 245n–447 (b) and (c), for the beer industry, which remained in force pursuant to § 40 (b) of the Minimum Wage Act, 29 L.P.R.A. § 246k (b), when Manda-

---

or may not include the nonworking days comprised within the period covered by the same. Any contract whereby the employee waives, for money or other consideration, his right to actually take his vacation leave, shall be null and void. Any employer who fails to grant any of his employees the vacation leave he is entitled to after the same has accumulated for more than two years, shall grant him the total thus far accumulated and pay him twice the salary corresponding to the period in excess of said two years.

"*Article IV—Sick Leave*

"Every employee shall be entitled to sick leave with full pay effective when he begins to enjoy it, at the rate of the following workdays in which he has worked at least the following hours:

| "*Days per month* | *Hours Worked* |
|---|---|
| 1¼ | 112 or more |
| ½ | 60 to 111 |

"Any employee who works less than sixty (60) hours in any month will not accrue any sick leave during that month. Sick leave not taken by the employee during the course of the year shall accrue for succeeding years up to a maximum of thirty (30) days. Except in cases of Acts of God, the employee shall notify his employer about his illness the same day he is absent. If the salary has not been stipulated by days or longer periods, the wages corresponding to each day of sick leave shall be computed by multiplying by eight (8) the regular wage rate he is then receiving. In case of an illness lasting over a period of two days, the employee must accredit the same with a medical certificate in order to be entitled to enjoy the leave herein provided for."

[2] "*Article I—Definition of the Industry*

"This Mandatory decree is applicable to *all the employees* in the *Alcoholic Beverage and Industrial Alcohol Industry* . . .

"
.
"
.
"
.

"It does not include, insofar as minimum wages are concerned, employees working in a bona fide capacity as *travelling salesmen.*

tory Decrees Nos. 30 and 72 were approved on September 11, 1957, and on January 15, 1965. The Asociación de Productores de Ron maintains that the provisions concerning vacation and sick leave are not totally valid.[3]

—A—

Provisions concerning Vacation and Sick Leave

—1—

The original legislation on minimum wages—Act No. 8 of April 5, 1941 (Sess. Laws, p. 302)—authorized the minimum wage committees to investigate and report to the Minimum Wage Board, and the latter to fix, among other things, the labor. conditions necessary for the maintenance of the health, safety, and welfare of the employees and workers in the different occupations, businesses, and industries. During 15 years said organization fixed, as part of the mandatory decrees approved, labor conditions such as the maximum working periods, minimum compensation guarantee, full pay for holidays, vacations, maintenance of sanitary and hygienic facilities, and sick leave.[4] The Minimum Wage Act in force,

---

[3] Mandatory Decree No. 30, 29 R.&R.P.R. §§ 245n–521 to 523, applicable to the alcoholic beverage industry, which was approved subsequent to the Minimum Wage Act of 1956, did not contain provisions concerning these matters, except as indicated, with respect to the beer industry. Mandatory Decrees No. 64, 29 R.&R.P.R. §§ 245n–851 and 852, applicable to the alcoholic beverage and industrial alcohol industry, and No. 65, 29 R.&R.P.R. §§ 245n–861 and 862, applicable to the alcoholic beverage industry for the local trade did not contain provisions to that effect either.

[4] The following decrees fixed the right of the employees to vacation and sick leave:

| No. | 29 R.&R.P.R. § | Applicable to | Date of Approval |
|---|---|---|---|
| 4 | 245n–58 | Hospital, Clinical or Sanatorium Service | 6/12/51 |
| 6 | 245n–98 | Restaurant, Bar and Soda Fountain Business | 12/2/54 |
| 7 | 245n–117 | Theater and Cinema Business | 9/16/53 |
| 8 | 245n–138 | Retail Trade | 6/28/55 |
| 12 | 245n–195 | Transportation Service | 12/4/46 |

Act No. 96 of June 26, 1956, 29 L.P.R.A. §§ 245 to 246m, evidenced a new public policy concerning the intervention of the State in the formulation of the working standards and conditions. Aware of the development and vitalization of the labor organizations—propitiated by the Labor Relations Act, Act No. 130 of May 8, 1945, 29 L.P.R.A. §§ 61 to 76, which recognizes and protects the rights of the workers to organize themselves, to bargain collectively, and to carry out activities for their own benefit, in conjunction, in its application to the industries in interstate commerce, with the Federal Labor Relations Act, 29 U.S.C. § 141—the Legislature preferred to limit the public action to the fixing of minimum wages, leaving to the field of collective bargaining[5] everything else referring to the fixing of the other working conditions, and, among them, those relating to vacation and sick leave. *Marrero*

| 13 | 245n–214 | Laundry and Dry Cleaning Business | 6/11/47 |
| 16 | 245n–275 | Wholesale Trade | 8/24/49 |
| 18 | 245n–315 and 316 | Dairy Industry | 11/27/50 |
| 22 | 245n–398 | Hotel Business | 8/6/52 |
| 23 | 245n–427 | Ice Cream Industry | 12/11/52 |
| 24 | 245n–447 | Beer Industry | 6/28/54 |

The following decrees fixed the right of the employees to vacation leave only:

| No. | 29 R.&R.P.R. § | Applicable to | Date of Approval |
| 9 | 245n–155 | Bread, Cracker, Bakery Products, and Alimentary Pastes Industry | 4/30/45 |
| 14 | 245n–234 | Furniture and Other Wood Products Industry | 8/11/48 |
| 15 | 245n–254 | Quarrying Industry | 10/22/48 |
| 20 | 245n–356 | Printing, Publishing, and Other Graphic Arts Industry | 9/5/51 |
| 21 | 245n–376 | Needlework Products Manufacturing Industry for the Local Trade | 10/9/52 |

[5] The corresponding report expressly set forth as one of the objectives of the project, that of "Limiting the duties and powers of the Minimum Wage Board to the fixing and revision of minimum wages exclusively, eliminating the investigation and determination of other working conditions, which would retard the administrative proceeding and which rather corresponds to the field of collective bargaining." 8-3 Journal of Proceedings 1065 (1956). See, also, par. (e) of the declaration of principles of the Act, 29 L.P.R.A. § 245.

*Cabrera* v. *Caribbean Refining Co.*, 93 P.R.R. 246, 256–57 (1966). However, it expressly provided that the provisions contained in the mandatory decrees in force on the date of approval of the Act, other than those relative to minimum wages, would subsist with full force and effect, even though the Board could subsequently change the minimum wage rates, § 40(b), 29 L.P.R.A. § 246k(b); *Martín Santos* v. *U.R.H.C.*, 89 P.R.R. 173 (1963).

On March 7, 1968, H.B. No. 1085 was introduced, whose title reads as follows:

"Act to amend subdivision (G) of Section 1, subdivision (A) of Section 10, subdivision (A) of Section 11, the first paragraph of Section 12, Section 14, subdivision (A) of Section 15, the first paragraph of Section 17, Section 19, subdivisions (A) and (B) of Section 21, Section 26, subdivision (F) of Section 29, and Section 38 of Act No. 96 of June 26, 1956, as amended, known as the Minimum Wage Act of Puerto Rico."

In compliance with Rule XV of the Regulations of the House of Representatives,[6] since amendments by addition were involved, in the aforementioned House Bill the phrase "working conditions" is repeatedly underlined,[7] inasmuch as its purpose was to confer authority to the Minimum Wage Board to fix minimum wages and also to establish working conditions in the mandatory decrees.

Said bill having been referred to the Labor Committee, the approval of the measure was recommended with a fundamental amendment which consisted in authorizing the Board

---

[6] ". . . When any Act in force is sought to be amended, the words added to the statute shall appear underlined and the words eliminated therefrom shall appear in brackets. No bill or resolution shall be received in the Office of the Secretary which does not comply with these requirements . . . ."

[7] In the proposed amendment to the first paragraph of § 12, in providing the preparation, by the corresponding committee, of the report containing its conclusions and a proposed decree recommending the minimum wage rate, they inserted "and the working conditions which should be fixed, including vacation and sick leave."

to grant specifically vacation and sick leave instead of, in a broader sense, to fix working conditions in general. Journal of Proceedings 1332 (1968). In the corresponding report of the Labor Committee, it was stated:

"House Bill No. 1085 amends the Minimum Wage Act of Puerto Rico to empower the Minimum Wage Board to regulate the granting of vacation and sick leave in addition to minimum wages, in the decrees which it may approve.

"The original Minimum Wage Act, Act No. 8 of April 5, 1941, which was in force from July of said year until June 1956, granted the Board power to fix labor conditions. Under said Act, 24 minimum wage decrees were approved, each one of them containing, in addition to minimum wages, provisions concerning other labor conditions. Among those provisions are the fixing of a working period, vacations, sick leave, guarantee of minimum weekly or daily compensation, pay for holidays not worked, and others.

"Of the 24 decrees approved under said Act, only 16 contain provisions on vacations. It is estimated that at the present time those provisions apply to some 84,000 workers, which is about 21 percent of the total number of persons receiving wages from the private industry, which amounts to 400,000 persons.

"On the other hand, only 10 decrees contain provisions on sick leave, which apply at the present time to some 71,000 workers, 18 percent of the workers receiving wages from the private industry.

"The Legislature, in approving in 1956 the Minimum Wage Act in force, which deprived the Board of the power to fix working conditions, had the intention of promoting the growth of the organized labor movement. It was then believed that by limiting the intervention of the State in procuring more favorable working conditions for the workers, the growth of the organized labor movement would be promoted and said conquests would be attained through collective bargaining. The Legislature intended also to hasten the proceedings for the fixing and revision of minimum wages in order that the wages in the different industries in the island could be revised at least once every two months.

"Approximately 12 years have elapsed since the approval of the Minimum Wage Act in force. It is evident that up to now the objectives sought have not been attained. Labor unions have not developed as it was expected, rather there is the impression that the proportion of unionized workers has decreased. It is believed that the number of workers who have obtained the right to vacation and sick leave, through collective bargaining, is very limited. There are still large, not unionized groups in agriculture, commerce, banking, and other services, which are not entitled to vacation and sick leave.

"We consider that the Minimum Wage Board should again be granted the power to regulate matters concerning the enjoyment of vacation and sick leave. The right to enjoy vacation and sick leave is fundamental, and should be guaranteed by law or by mandatory decree. Granting again to the Board the power to fix vacation and sick leave would be in consonance with the maximum flexibility policy adopted by our Government in relation to the fixing of minimum wages, policy which permits the regulation, in each industry, in accordance with the social and economic realities and of competition thereof.

"On the other hand, we consider that granting again said power to the Board would not retard the program of revision of minimum wages. The lentitude of the Board under the first Act was due, in our opinion, to the lack of resources and of personnel and to the quasi-judicial proceeding, long and litigious, then followed. The quasi-legislative proceeding followed at the present time permits a speedy and effective revision."

—2—

Appellants maintain that the action of the Minimum Wage Board in approving the first revision of Mandatory Decree No. 72 is void and ineffective for the following reasons:

(a) The Act which authorized its approval—Act No. 116 of June 21, 1968, *supra*—is unconstitutional because it violates the provision in § 17 of Art. III of the Constitution of the Commonwealth of Puerto Rico, insofar as the title of the same does not comply with the requirement of expressing the subject of the Act;

(b) Assuming the constitutionality of Act No. 116, the Board exceeded its powers and authority in acting contrariwise to the intention of the lawmaker in approving the aforementioned Act, thus vulnerating the public policy sanctioned in subd. (e) of § 1 of the Minimum Wage Act, to wit, to encourage collective bargaining between employers and employees in order that it may serve as a social instrument to insure "those other working conditions" requisite to the health and welfare of workers;

(c) The Board exceeded the authority granted to it by Act No. 116 in providing for the granting of vacation and sick leave in excess of the previous provision in Mandatory Decree No. 24, applicable to the beer industry, because it is contrary to the provision in § 40(b) of the Minimum Wage Act, 29 L.P.R.A. § 246k;

(d) The Board acted without authority and in excess of its powers in approving a uniform standard for the granting of vacation and sick leave to all the divisions of the alcoholic beverage industry, instead of establishing classifications within the industry taking into consideration therefor important factors which distinguish the different divisions;

(e) The Board acted without authority in granting the right to accumulate one-half workday for vacation and sick leave for each month in which the employee has worked at least sixty and up to one hundred eleven hours, including those employees working part time, thus departing from the spirit of the Minimum Wage Act and from previous pronouncements of the Board itself, contrary to the accumulation of benefits by part-time employees.

—3—

(a) The constitutional provision allegedly violated is § 17 of Art. III of the Constitution of the Commonwealth, identical to the text of par. 8 of § 34 of the Organic Act (Jones Act) insofar as it provides that "No bill, except general appropria-

tion bills, shall be passed containing more than one subject, *which shall be clearly expressed in its title. . . ."* (Italics ours.) It is argued that, although the title of the Act expresses that the same is to amend several sections of the Minimum Wage Act, it does not clearly appear anywhere that the intention is to authorize the Board to grant vacation and sick leave to the employees.

As we have said on previous occasions only in a clear and conclusive case would we be justified in annulling an Act because of deficiencies in its title in violation of the aforecopied constitutional provision, *Rivera* v. *District Court*, 62 P.R.R. 491 (1943); *Sunland Biscuit Co., Inc.* v. *Minimum Wage Board*, 68 P.R.R. 345, 354 (1948). It is advisable to remember that the purpose of the constitutional requirement is to appraise the public in general and the lawmakers in particular of the subject covered by the Act, so that the former may oppose its approval if they consider the same to be prejudicial to their interests, and the latter may be in a position to cast their votes aware of the subject legislated upon, *Rodríguez* v. *District Court*, 60 P.R.R. 894, 897 (1942); but this does not mean that the title should contain a detailed description of the subject involved, but rather that it is sufficient to express its purpose in general terms; that it be an index of its content, since it would be impractical to relate the different details which precisely constitute the text of the Act, *People* v. *Vázquez Bruno*, 93 P.R.R. 526, 529 (1966). Together with the foregoing, it is sought to avoid bringing into the text subjects diverse in their nature, having no connection with the one specified in the title, "that the legislature and the public might understand from the title that only provisions germane to the expressed object would be enacted," *People* v. *Carey*, 170 N.W.2d 145, 149 (Mich. 1969). See also, *In re Estate of Welch*, 457 P.2d 380 (N.M. 1969), and, Bernier, *Aprobación e Interpretación de las Leyes en Puerto Rico* 63–69 (1963).

In case of an amendatory act the prevailing doctrine does not require that the title express the specific changes sought by virtue of the proposed amendment, provided the subject is not remote from or extraneous to that of the original act. So that when the basic act reasonably comprises the subject covered by the proposed amendment, reference to the section or the article to be amended is sufficient. Only any substantive subject or matter not germane to the section or article specified would violate the constitutional provision. *White* v. *State*, 440 S.W.2d 660, 665 (Texas 1969); *Smith* v. *Davis*, 426 S.W.2d 827, 833 (Texas 1968); *Tom and Jerry, Inc.* v. *Nebraska Liquor Control Com'n*, 160 N.W.2d 232, 238 (Neb. 1968); *Clutts* v. *Jefferson County Board of Zoning Adjust.*, 210 So.2d 679 (Ala. 1968). *Laboy* v. *Corporación Azucarera, etc.*, 65 P.R.R. 397 (1945), on which petitioners rely, precisely illustrates this exception, because the case involves an evident deviation from the purpose of the original act, as was the incorporation, by amendment, to a section of the Penal Code, of provisions imposing liability of a civil nature.

Applying the rules set forth to the situation we are considering, we are constrained to conclude that appellants' assignment is inappropriate. At least, it can be affirmed that the amendment refers to germane subjects, suggested by and supplementary to the different sections amended. It was not unusual that in the distribution of the State's revenue, the organism entrusted with the State function to protect the welfare of the employees and workers, be granted again the function of fixing, as part of the mandatory decrees, conditions concerning the enjoyment of vacations with full pay and sick leave. Apparently it is generally accepted that these benefits are as part of the wage as is the pay regularly received for work done. *Hilton Hotels* v. *Minimum Wage Board*, 74 P.R.R. 628, 677 (1953). As a matter of fact the principal factor considered for the fixing thereof is the capacity and ability

of the industry to pay these additional benefits, as it appears from the same economic studies utilized in the fixing of minimum wages.

We cannot agree that the title of Act No. 116 did not properly inform the public and the lawmakers of the intent to amend the Minimum Wage Act. Although in essence it undeniably involved a change in the public policy, it was completely germane to the original legislation. Insofar as the lawmakers are concerned, the purpose of introducing extraneous matter in the proposed legislation has noticeably diminished with the adoption of the regulation requirements concerning the manner of amending the law in force—see footnote 6—and also, with the requirement of the presentation of reports by the committees considering the measure. After examining the legislative history aforerecited, it can hardly be said that the lawmakers who unanimously voted in favor of Act No. 116 did not do it consciously and fully informed that the consequence of their action was to authorize the Minimum Wage Board to grant vacation and sick leave in the mandatory decrees it would approve thereafter. Insofar as the interested public is concerned, in the brief submitted by the Asociación de Industriales de Puerto Rico, as amicus curiae, it is stated that the latter, as well as the other parties affected, moved for the holding of public hearings on the bill, petition which was not heard by the legislative committees. But that indicates that they were equally alerted as to the proposal by virtue of said piece of legislation.

(b) It is maintained that the Board exceeded its powers in acting contrariwise to the intention of the lawmaker expressed in subd. (e) of § 1 of the Minimum Wage Act, 29 L.P.R.A. § 245, which states: "It is hereby further declared to be the policy of the Legislature of Puerto Rico to encourage collective bargaining between laborers and employers which will serve as an effective social instrument progressively to raise the level of minimum wages, reduce the working day,

and insure those other working conditions requisite to the health and welfare of workers."

We need not stop to consider this ground for challenge. It suffices to read the aforecopied report of the legislative body which considered H.B. No. 1085, to realize that if the Board has done something, it is to follow faithfully the purpose which prompted the Legislative Assembly to approve it. Precisely, this declaration of public policy contained in subd. (e) was abandoned because the collective bargaining had not produced the results expected. It is fitting to remember, also, that Act No. 96 of June 26, 1956, *supra,* did not contemplate mainly the purpose indicated, but rather, it tended to prevent the approval of federal legislation foreshadowed in the matter of minimum wages for locally established industries engaged in interstate commerce.[8]

■ (c) Cervecería Corona, Inc., maintains that the power granted to the Board to grant vacation and sick leave refers to those industries or parts of industries in which said benefits have not been fixed by decrees prior to 1956, invoking therefor the provisions of par. (b) of § 40 of the Minimum Wage Act, *supra.*

We cannot favor this proposed near-sighted interpretation. Paragraph (b) of § 40 was necessary to preserve some benefits already granted to the employees of certain industries and which the latter had been enjoying for a long time. It was not reasonable, nor compatible with the public policy of the improvement of the living conditions of the workers which were eliminated, considering the limited authority granted to

---

[8] Subsection (d) of the Declaration of Principles of the Minimum Wage Act states:

"It is hereby further declared to be the policy of this act that the minimum wage level for workers employed in industries producing or shipping their products for sale in the United States in competition with industries located there, should, so far as possible, equal or approximate the minimum wages provided by this act for workers in the respective competitive industries."

See the preceding footnote 5.

the Board after the approval of the new Act for the alteration of the minimum wage rates, exclusively. It does not mean that it was sought to perpetuate the benefits previously granted. The change of public policy with respect to the intervention of the Board in the determination of the latter, necessarily requires that it can alter those already existing in former decrees. This alteration, which is intimately related to the economic conditions of the particular industry, may well be for the purpose of increasing or diminishing the right already granted. Any other interpretation could lead to undesirable discriminatory results.

It is argued that it is significant that the lawmaker, in referring to vacation and sick leave used the term *"granting,"* while in referring to minimum wage it said "fixing or *revision."* This argument has no more significance than that of a curious semasiological exercise.

(d) This assignment—the approval of uniform standards for vacation and sick leave, instead of establishing classifications within the industry—is grounded on the fact that the committee, in recommending, as well as the Board in approving, denied themselves the power to fix such classifications for failure to amend expressly § 16 of the Act, 29 L.P.R.A. § 245o, which in its pertinent part continues providing that "The committees may also recommend different minimum wages for various districts or regions or for various categories or classes of the same industry where, in its judgment, such differentiation may be advisable due to the conditions existing between said districts, regions, or categories of the same industry, provided such action does not allow competing advantages to other districts, regions or categories of the same industry. The rate recommended shall be uniform for each class, category, district or region of the industry concerned."

It has not been pointed out, nor have we noted from our examination of the lengthy record of the proceedings

leading to the approval of the decree, that the position indicated was adopted. The report of the committee which studied the industry reveals, on the contrary, that the decision to recommend uniform standards for vacation and sick leave was deliberate, because such determination found consistent support in the economic study of the balance sheet of the establishments which were considered as a sample.[9] To that effect it stated:

"After *analyzing all the data and testimonies* received during the public hearing, the committee decided that all the recommendations to be made concerning minimum wage, vacation, and sick leave, *shall be uniform* for all the workers of the industry." (Italics ours.)

It is proper to point out that in granting the right to vacation and sick leave to all the workers of the industry who would have worked 112 or more hours per month, the standard which had been prescribed about fifteen years before for the employees of the beer industry was adopted, notwithstanding the fact that this division was the one having the lowest profits—7.5% net profit to net worth—compared to the rum industry—11.1% net profit to net worth. (Exh. J-6.) Any difference which might be fixed in these additional benefits should be based on sound reasons concerning the economic incapacity of a determined division of the industry to pay them.

(e) Finally, the Asociación de Productores de Ron seeks to charge the Board with acting discriminatingly in the revision of Decree No. 72, in permitting the accumulation of vacation and sick leave to "part-time" employees, while in other industries it expressly rejected this view. To that effect it calls our attention to the agreement adopted on December 10, 1968, with respect to Mandatory Decree No. 42 (Fourth Re-

---

[9] A minimum wage of $1.60 per hour was recommended. The study revealed that the average wage the industry was paying was $1.803 per hour.

vision), applicable to the retail trade industry.[10] However, as the Board points out in its brief, this agreement referred to a special class of employees of said industry, which is not included among those of the alcoholic beverage industry, to wit: the student-learners in the distributive education program of the Department of Public Education and those employees of impaired earning capacity or apprentices referred to in §§ 22 and 23 of the Minimum Wage Act, 29 L.P.R.A. §§ 245u and 245v. However, when the final version of the aforementioned decree was approved, in its Art. VI, concerning vacation and sick leave, 29 R.&R.P.R. § 245n–646, effective February 27, 1969, difference was established as to said rights between the employees who work at least 120 hours per month, and those who work between 80 and 120 hours during the same period.

It is advisable to point out that since Act No. 116 of June 21, 1968, *supra*, went into effect, the Minimum Wage Board has approved several decrees granting the right to vacation and sick leave. In some of them a fixed standard has

---

[10] Said agreement states:

"By unanimous vote it is agreed to remand to the committee, for reconsideration and for the reasons hereinafter set forth, the recommendations not approved by the Board. . . .

"The Board is of the opinion that the recognition of the fact of granting vacations to workers having a limited number of hours worked per month departs from the spirit of the Act, which is to permit the worker the enjoyment of a reasonable rest after a long period of work in order that he may recover from the physical and mental fatigue caused thereby and to avoid the consequences it entails to the workers as well as to the industry in general.

"The granting of vacation and sick leave to this type of day laborers would not comply, in our opinion, with the purposes contemplated. On the contrary, it would limit *the employment of students and other personnel who obtain additional income working in part-time jobs.* This exposition would bind the employers to keep detailed records of the hours worked by each part-time employee, and it would discourage the employment of the latter."

been established,[11] in others, it has been subjected to the number of hours worked during the month,[12] or the number of years in the employment.[13] Rather than showing a discriminatory attitude, this reveals that the actions of said organism are based on the particular circumstances of each industry.

—B—

### Inclusion of Traveling Salesmen in the Benefits of Vacation and Sick Leave

Upon explaining the coverage of the definition of the industry in Art. I of Mandatory Decree No. 72, and specifically,

---

[11]

| Arts. | Decree No. | Industry | Date of Approval |
|---|---|---|---|
| III and IV | 60 (2d revision) | Banking, Insurance, and Finance | June 10, 1969 |
| III and IV | 57 (4th revision) | General Agricultural Activities | June 17, 1969 |
| V and VI | 25 (5th revision) | Lumber and Work Products, Metal Furniture, Doors, and Windows | July 24, 1969 |
| II and III | 77 | Textiles and Textile Products | Sept. 24, 1969 |
| VII and VIII | 47 (5th revision) | Restaurant, Bar and Soda Fountain | Jan. 20, 1970 |

[12]

| Arts. | Decree No. | Industry | Date of Approval |
|---|---|---|---|
| III and IV | 74 | Watching and Protective Service | Oct. 10, 1968 |
| III and IV | 69 (2d revision) | Tobacco and Food Crops | May 8, 1969 |
| VI and VII | 42 (4th revision) | Retail Trade | June 2, 1969 |
| IV and V | 73 (1st revision) | Communication | July 15, 1969 |

[13]

| Arts. | Decree No. | Industry | Date of Approval |
|---|---|---|---|
| II | 76 | Leather, Leather Goods, and Related Products | Sept. 18, 1969 |
| II | 75 | Corsets, Brassieres, and Related Products | Sept. 24, 1969 |

the exclusion of the traveling salesmen as to the fixing of minimum wages, it was stated that:

"The preceding definition is substantially the same as that in Mandatory Decree No. 72, applicable to the *Alcoholic Beverage and Industrial Alcohol Industry* in force since February 4, 1965. One of the changes made refers to the fact that, formerly, traveling salesmen were excluded from the definition. In the definition that is now approved, traveling salesmen are excluded only from the minimum wage provisions, inasmuch as it is intended that they be covered by those provisions for vacation and sick leave which are eventually approved.

"The employees working in a bona fide capacity as traveling salesmen are not exempted from the law, but because of the nature of their work, the Board expressly excluded them from the definition of the industry on previous occasions, but only for minimum wage purposes, the fixing of which was the only faculty the Board then had.

"Act No. 116 of June 21, 1968, amending the Minimum Wage Act of Puerto Rico, authorizes the Board to establish, in addition to minimum wages, vacation and sick leave.

"Mandatory Decree No. 24, applicable to the Beer Industry, in force since August 1, 1954, applies to the workers in that industry, insofar as maximum working periods and working conditions. Some of the provisions of that decree also cover traveling salesmen. Such provisions are the ones referring to weekly rest day, vacation leave, sick leave, and others. These employees are expressly excluded from the minimum wage provisions, guarantee of minimum compensation, and maximum working periods.

"By traveling salesmen it is meant those employees who sell, on behalf of their employer, but without personally taking part in the distribution or delivery of the articles sold. Usually, these employees do not work at the main office, or return daily to it; they are not supervised once they go out to sell; they use their discretion as to the amount of work to be done and time to be spent in the selling activities; and the nature of their work makes it impossible to determine the real hours worked each day."

As a matter of fact, in the original Mandatory Decree No. 72, the traveling salesmen were excluded from its pro-

visions, 29 R.&R.P.R. § 245n–931 (3), as to the minimum wages fixed. However, the traveling salesmen of the beer industry retained, by operation of § 40 (b) of the Minimum Wage Act, *supra*, the right to vacation and sick leave which had been granted to them since the effectiveness, on August 1, 1954, of Mandatory Decree No. 24, applicable only to said industry.[14] In the other sections of the alcoholic beverage industry, specifically in the rum industry, such rights had not been granted to the employees in Mandatory Decrees Nos. 30, 64, and 65, because the latter were approved after 1956.

It is argued that since vacation and sick leave are subject to the monthly work performed in terms of *hours* of *work* —1 1/4 day per month in which 112 or more hours of work have been accrued; 1/2 day per month in which 60 to 111 hours of work have been accrued—and the determination of this unit of work for eligibility to obtain said benefits is difficult in the case of traveling salesmen, its inclusion by the Board is not within the exercise of its authority. They invoke *Espasas Dairy, Inc.* v. *M.W.B.*, 96 P.R.R. 796 (1969) and 94 P.R.R. 781 (1967). It is true that in *Espasas* we referred to the difficulty in the verification of the hours actually worked by the driver-salesmen and their assistants, as one of the factors to determine, in the construction of Act No. 114 of June 30, 1965, 5 L.P.R.A. § 1120 *et seq.*, that the Board lacked authority to fix minimum wages *per hour* to said employees and that it should limit itself to fix a wage on the basis of a commission. *Cf. A. D. Miranda, Inc.* v. *Falcón*, 83 P.R.R. 708 (1961). It is no less true that in said Act the lawmaker also provided that "The provisions contained in the laws and decrees applicable to the milk and cattle industries regarding *leave of absence . . . sick leave . . .* shall subsist in their full force and effect with regard to milkmen and their

---

[14] Cervecería Corona, Inc., does not specifically challenge the application of the decree to the traveling salesmen as to the aforementioned benefits.

helpers." And the applicable decrees precisely established the hour worked as the determining unit for eligibility for the enjoyment of said benefits, Arts. V and VI of Mandatory Decree No. 18, applicable to the dairy industry, 29 R.&R.P.R. §§ 245n–315 and 316.

■ The fact that the determination of these rights may be difficult does not mean that its recognition constitutes an action in excess of the powers of the Board. We do not believe either that the contention has virtuality if it is considered that in one section of the industry—that of the beer industry —it has been operative for over 15 years. Perhaps it is advisable that a more specific formula be prescribed for the computation of vacation and sick leave for the traveling salesmen, but the absence thereof does not render void this aspect of the decree.

Decree No. 72 (First Revision), as approved by the Minimum Wage Board of Puerto Rico, will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein.