**B. L. SMITH et al., Appellants,**

**v.**

**Charles G. DAVIS et al., Appellees.**

**No. B–470.**

Supreme Court of Texas.

April 3, 1968.

Greene, Stolhandske, Benbow & Gross, Sam Gross, San Antonio, for appellants.

James E. Barlow, Dist. Atty., Preston H. Dial, Jr., and R. Emmett Cater, Asst. Dist. Attys., San Antonio, for appellees.

GREENHILL, Justice.

This controversy turns upon the constitutionality of a statute providing a manner of taxation for the financing of hospital districts. The particular district before the Court is that of Bexar County which is establishing a teaching hospital in San Antonio to be affiliated with the Medical School, South Texas Branch, of The University of Texas.

The suit was instituted by B. L. Davis and four other citizens, herein called plaintiffs, for themselves and as representatives of a class of taxpayers, to enjoin permanently the levying, assessment, and collection of taxes under Article 4494n, Section 2b,[1] and for a declaration that the statute is unconstitutional. The defendants were the County Judge, County Commissioners, and County Tax Assessor-Collector of Bexar County. Trial was to the court without a jury. The court upheld the validity of the statute and denied the injunction. The case was brought directly to this Court under Rule 499a, Texas Rules of Civil Procedure. The record does not contain a statement

of facts, but the transcript contains findings of fact made by the trial court which are not attacked here. The only questions before us relate to the constitutionality of the statute.

The asserted grounds of unconstitutionality of the statute will be discussed below. They include the assertion that the bill is a local or special bill; that it has a defective caption; that it was a "revenue bill" which must have originated in the House of Representatives; and that it offends the Fourteenth Amendment to the U.S. Constitution and related sections of the Texas Constitution dealing with equal and uniform taxation.

In 1955, the people of Bexar County voted to create the Bexar County Hospital District pursuant to Article 4494n. In 1961, they voted a six and one-half million dollar bond issue to support the hospital district and also voted to levy a tax for the payment thereof. One and one-half million dollars derived from the sale of the bonds was expended for the renovation of the Robert B. Green Memorial Hospital. The remaining five million was used for the construction of a teaching hospital in conjunction with the construction of The University of Texas Medical School, South Texas Branch. At the time of the trial of this case, the teaching hospital was 70 to 75 per cent completed. The cost of the teaching hospital was fifteen and one-half million dollars. The district obtained, primarily from federal sources, grants of ten and one-half million dollars for this construction, which grants are not repayable if the structure is operated as a teaching hospital. It is anticipated that the cost of operation of the teaching hospital will be five million dollars annually.

Prior to this controversy, the tax for the hospital district was on the basis of 25 per cent of the fair cash market value of the property in the district, which was the same basis for the tax assessment for state

1. All references to statutes herein are to Vernon's Annotated Civil Statutes unless otherwise indicated.

and county purposes. The trial court's finding of fact, unquestioned here, was that additional revenue was needed.

Article 4494n was amended in 1965 by the addition of Section 2a, which provided that property in hospital districts created in counties with over 450,000 inhabitants could be assessed at a greater percentage of fair market value than that used for state and county purposes, but only after such assessment procedure was approved by a vote of the people. An election was held pursuant to that section. The voters of Bexar County voted against authorizing the assessment of property at a higher percentage of fair market value. Subsequent to that election, the Legislature in 1967 amended the statute by the addition of Section 2b. This is the portion of the statute attacked here. It states:

"In Hospital Districts created under this Act located in counties containing a population of 650,000 or more according to the last preceding Federal Census and having teaching hospital facilities that are affiliated with a state-supported medical school, the Commissioners Court, on its own motion or on the appproval of the qualified property taxpaying electors at an election held pursuant to the provisions of Section 2a of this Act, may order the Assessor and Collector of Taxes to assess the property in the Hospital District at a greater percentage of its fair cash market value than that used in assessing the property for state and county purposes, but in no instance shall that amount exceed fifty (50) per cent of fair cash market value. Such order to the assessor and collector of taxes spread upon the minutes of Commissioners Court shall constitute notice for all purposes to the taxpayers of said Hospital District of the intention to increase assessments." [2]

It is stipulated that the above act is applicable to Bexar County.

Pursuant to this section, the Commissioners Court voted to assess property at a higher percentage of fair cash market value than that used for state and county purposes, at a valuation not to exceed fifty per cent of its fair cash market value. The plaintiffs thereupon filed this suit. The first contention is that Section 2b is a local or special law and therefore invalid under Art. 3, Sec. 56, Texas Constitution, Vernon's Ann.St., which prohibits the passage of local or special laws in cases where a general law can be made applicable. We shall assume that general laws can be made applicable to hospital districts and that the statute in question must conform to this section of our Constitution.

The applicability of the section in controversy is limited to counties with over 650,000 inhabitants containing a teaching hospital facility affiliated with a state-supported medical school. The contention is that this classification is arbitrary and unreasonable and renders Section 2b unconstitutional as a local or special law.

The Legislature may restrict the application of a law to particular counties by the use of classifications, providing the classifications are not arbitrary. There must be a reasonable relationship between the classification and the objects sought to be accomplished by the statute. Smith v. Decker, 158 Tex. 416, 312 S.W.2d 632 (1958); Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000 (1941). As stated in *Miller,* the classification "* * * must not be a mere arbitrary device resorted to for the purpose of giving what is, in fact, a local law, the appearance of a general law." The ultimate test for whether a law is general or special is whether there is a reasonable basis for the classification and whether the law operates equally on all members within the class. County of Cameron v. Wilson, 160 Tex. 25, 326 S.W.2d 162 (1959); Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791 (1950).

2. Acts 60th Leg.1967, Ch. 15 § 1, p. 34 codified as Article 4494n.

 In passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours. As quoted in this Court's opinion in Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 at 634 (1939), " 'There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.' "

 It cannot fairly be said that the classification made by Section 2b is without any reasonable basis. We may judicially notice from the statutes that there are only three state-supported medical schools in Texas,[2] and that county hospital districts provide, at no cost to the State, teaching hospital facilities for two of these medical schools.[3] We may assume that those hospital districts operating teaching hospitals have special requirements and obligations which the legislature recognized in classifying them separately. Article 9, Section 4 of the Texas Constitution provides that cities and counties within county-wide hospital districts shall not levy taxes for hospital purposes, and prohibits the legislature from making appropriations for the construction or maintenance of hospitals operated by such hospital districts. Therefore, the operation and maintenance of the teaching hospitals operated by hospital districts must be financed by the hospital districts themselves. The State has a clear and obvious interest in the suitable operation of teaching hospitals for its medical schools, and thus there is a reasonable justification for special provisions relating to the financing of hospital districts operating such teaching hospitals. The legislature could have reasonably determined that property assessments for the maintenance of these hospital districts would be best determined by county officials rather than the voters; this conclusion could be based upon the necessity for more flexibility in providing funds for the operation of teaching hospitals, or a desire to provide that funds for the necessary operation of teaching hospitals for the State medical schools would not be dependent upon the approval by the voters of a particular county. Even though Section 2b is now applicable only to the two county hospital districts that maintain teaching hospital facilities affiliated with state-supported medical schools, this limitation does not render the statute local or special in nature, because the operation of such teaching hospital facilities reasonably distinguishes these counties from the remainder of the State in a manner that is germane and related to the purpose of the legislation. See Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467 (1936). Thus, we cannot hold that the legislature acted arbitrarily or unreasonably in confining the operation of Section 2b to those hospital districts which maintain teaching hospital facilities for state-supported medical schools.

2. The University of Texas Medical Branch at Galveston; The University of Texas Southwestern Medical School, in Dallas; and The University of Texas South Texas Medical School, in San Antonio.

3. The Dallas County Hospital District operates teaching hospital facilities for the Southwestern Medical School, see Art. 2603j; and the Bexar County Hospital District constructed and will maintain teaching hospital facilities for the South Texas Medical School, Art. 2606c. The State provides teaching hospital facilities for The University of Texas Medical Branch at Galveston, and appropriations therefor, see, for example, Acts, 60th Legislature, Ch. 784, p. 2257 (1967), but does not maintain teaching hospitals for the Southwestern and South Texas Medical Schools.

■ Further, the classification limiting the applicability of Section 2b to counties with 650,000 or more inhabitants is not unreasonable, because this classification includes all counties to which the section would otherwise be applicable.[4] As stated, only two counties operate teaching hospital facilities for state medical schools, and both these counties fall within the population classification of Section 2b. Thus, the population classification does not render the section inapplicable to any county to which it would otherwise be applicable, and the population classification is not discriminatory or unreasonable in the context of the existing circumstances and purpose of the legislation. We do not have to consider the effect of the population bracket as if it discriminated against smaller counties with teaching hospital facilities, because it does not do so; and we may assume that the legislature would recognize the possibility of an unreasonable classification in the event a state-supported medical school were created in a smaller county at some time in the future.

The classifications of Section 2b do not limit its applicability to Bexar County. The statute involved is not permanently applicable to only one county, as in City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W.2d 470 (1931), nor did the statute apply to only one county at the time of its enactment, as in Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000 (1941) and Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467 (1936). Furthermore, there is no true "bracket" classification, as in Smith v. Decker, 158 Tex. 416, 312 S.W.2d 632 (1958), where an act regulating the bail bond business was applicable only to counties with cities of more than 73,000 and less than 100,000 inhabitants, and to counties with more than 350,000 population. This Court held that the exclusion of cities having 100,000 to 349,999 inhabitants was not reasonably related to the purpose of the

act, the regulation of bail bonding, and therefore the statute was invalid.

■ It has also often been held that a statute is not local or special within the meaning of the construction, even though its enforcement or operation is confined to a restricted area, if persons or things throughout the State are affected thereby or if it operates upon a subject in which the people at large are interested. County of Cameron v. Wilson, 160 Tex. 25, 326 S.W.2d 162 (1959); Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629 (1935); Reed v. Rogan, 94 Tex. 177, 59 S.W. 255 (1900). The operation of teaching hospitals for state-supported medical schools, to which Section 2b is germane, affects people throughout the State. It furnishes both physicians and increased opportunity for medical students throughout the State. People throughout the State have a vital interest in medical education. The subject matter of laws relating to medical schools necessarily confines the operation of such laws to the certain localities where medical schools are operated, but this does not render such laws local or special in nature. See Reed v. Rogan, supra. The first contention is overruled.

Plaintiffs' second contention is that the caption or title of Section 2b is defective, rendering the section unconstitutional under Art. 3, Sec. 35, of the Texas Constitution, which provides that "no bill shall contain more than one subject, which shall be expressed in its title."

The caption of Senate Bill 362, which became Section 2b, reads:

"An act relating to assessment of taxes in Hospital Districts located in counties having more than 650,000 population according to the last preceding Federal census, having teaching facilities affiliated with a state-supported medical school and organized pursuant to Chapter 257,

---

4. Bexar, Dallas and Harris Counties were the only counties within the State having 650,000 or more inhabitants according to the 1960 Federal Census.

Acts of the 54th Legislature, 1955, as amended, (Article 4494n, Vernon's Texas Civil Statutes); amending Chapter 257, Acts of the 54th Legislature, 1955, as amended (Article 4494n, Vernon's Texas Civil Statutes), to add a new Section 2b, and declaring an emergency."

■■■ The purpose of a title is to give a general statement of, and call attention to, the subject matter of an act, so that the legislators may be apprised of the subject of the legislation. With amendatory bills, it is settled that reference to the act or section to be amended is adequate, as long as the subject matter of the amendment is germane or reasonably related to the content of the original act. Schlichting v. Texas State Board of Medical Examiners, 158 Tex. 279, 310 S.W.2d 557 (1958); Shannon v. Rogers, 159 Tex. 29, 314 S.W.2d 810 (1958); English & Scottish-American Mortgage and Investment Co. v. Hardy, 93 Tex. 289, 55 S.W. 169 (1900).

■■■ There is no constitutional requirement that the caption of an amendatory act set out exactly what changes were made in the amended act, Shannon v. Rogers, supra, so long as the subject of the amendatory act is not "remote" from the subject of the original act, as in Board of Water Engineers v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722 (1955). "It would be burdensome if not intolerable to require that the title [or caption of an act] should be as full as the act itself. The word 'title' implies that no such requirement exists." Central Education Agency v. Independent School District, 152 Tex. 56, 254 S.W.2d 357 (1953). It is not necessary that the caption of an amendatory bill apprise the reader of the precise effects of the body of the bill, so long as the general subject of the amending bill is disclosed. Compare Shannon v. Rogers, 159 Tex. 29, 314 S.W.2d 810 (1958) with Board of Water Engineers v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722 (1955). The caption of Art. 4494n, Section 2b, was not

defective, and we therefore overrule plaintiffs' second contention.

The plaintiffs' third point is that Section 2b was a bill for "raising revenue" and therefore unconstitutional because it originated in the Senate rather than in the House of Representatives, as required by Art. 3, Sec. 33, Texas Constitution, which requires that "[A]ll bills for raising revenue shall originate in the House of Representatives * * *."

■■■ This constitutional limitation is confined to bills which levy taxes in the strict sense, and does not extend to bills for other purposes which may incidently create revenue. Day Land and Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865 (1887). This construction is almost uniformly followed in jurisdictions with identical or similar constitutional provisions. 1 Sutherland, Statutory Construction § 806 (3rd ed. 1943). Section 2b does not levy taxes for general purposes, and merely amends the procedure for assessing property contained in a general statute relating to hospital districts. Therefore, it was not a bill for "raising revenue" within the constitutional meaning. Yeary v. Bond, 384 S.W.2d 376, 380 (Tex.Civ.App.1964, writ ref'd n.r.e.); James v. Gulf Insurance Co., 179 S.W.2d 397, 403 (Tex.Civ.App.1944, rev'd on other grounds), 143 Tex. 424, 185 S.W.2d 966 (1945).

■■■ It is also contended that Section 2b violates Art. 8, Sec. 1 of the Texas Constitution and the Fourteenth Amendment of the U.S. Constitution because it denies the taxpayers of Bexar County equal and uniform taxation, and equal protection of the laws. Art. 8, Sec. 1 of the Texas Constitution provides that "taxation shall be equal and uniform, and all property * * * shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." These constitutional provisions do require that taxation be uniform, equal, and in proportion to the value of the property being taxed. State v. Whittenburg, 153 Tex. 205, 265 S.W.2d

**834**

569 (1954). However, it was found by the trial court and conceded by the plaintiffs that assessment of their property was uniform and equal with respect to other property in Bexar County and in proportion to the value of the property assessed. Thus the assessments are equal and uniform within the meaning of the constitution, Norris v. City of Waco, 57 Tex. 635, 641 (1882); and the equal protection clause of the Fourteenth Amendment of the U.S. Constitution is not offended. There is no constitutional requirement that different taxing bodies use the same proportion of fair market value in assessing property for tax purposes. See Avery v. Cooper, 107 Tex. 483, 180 S.W. 734 (1915).

Plaintiffs also contend that Section 2b violates Art. 1, Sec. 16 of the Texas Constitution which prohibits ex post facto laws, retroactive laws, and any law impairing the obligation of contracts. The plaintiffs assert that they, as taxpayers, acquired a "vested right" to have their property assessed under the provisions of Section 2a, which required an election before property could be assessed at a greater percentage of fair market value than that used for state and county purposes. This contention is also overruled. A taxpayer has no vested right to have his property assessed by any particular method or system, or in a provision for the submission of a proposed assessment to the voters. Northern Commercial Co. v. King County, 63 Wash. 2d 639, 388 P.2d 546 (1964); Mizer v. Kansas Bostwick Irrigation District No. 2, 172 Kan. 157, 239 P.2d 370, 382 (1951); 16 C.J.S. Constitutional Law § 240, p. 1210. The amendment of Art. 4494n by the addition of Section 2a did not create any vested right in the taxpayers of Bexar County, and therefore the Legislature did not take away any vested rights by the addition of Section 2b. Article 9, Section 9 of the Texas Constitution, which relates to hospital districts, does not require that such assessment changes be approved by the voters. This requirement was imposed by the Legislature in the enactment of Section 2a, and thus the Legislature was free to amend or abolish the requirement. Compare San Saba County v. McCraw, 130 Tex. 54, 108 S.W.2d 200 (1937). Section 2b did not operate retroactively; and the question of any bonds issued by the hospital district is not before this Court. There is here no constitutional question of impairment of the obligation of contracts, as in the *San Saba County* case and David v. Timon, 183 S.W. 88 (Tex.Civ.App.1916, no writ).

Plaintiffs' sixth and eighth points, urging that Section 2b violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution, have been previously discussed and overruled. We hold, therefore, that Article 4494n, Section 2b, is a valid and constitutional enactment. The judgment of the district court is affirmed.

GRIFFIN, J., notes his dissent.