In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00070-CV
______________________________


SAM G. THOYAKULATHU, M.D., AND SAM T. GEORGE, P.A., Appellants
 
V.
 
FRANCIS J. BRENNAN, INDIVIDUALLY, ET AL., Appellees


                                              

On Appeal from the 336th Judicial District Court
 Fannin County, Texas
Trial Court No. 36333


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            By the end of the last day


 to serve timely expert reports on defendants, Sam G.
Thoyakulathu, M.D., and Sam T. George, P.A. (Appellants), healthcare liability claimant, Francis
J. Brennan, had obtained and filed reports, but had not served them on Appellants. Evidence
suggests that, on that day, Brennan tried but failed to serve the reports by facsimile transmission. 
Appellants moved to dismiss Brennan's claims, but the trial court denied the motion and allowed
Brennan a thirty-day extension within which to serve the reports. Two orders were entered in
connection with the trial court's decision, one granting Brennan a thirty-day extension within which
to serve the reports, and the other denying Appellants' motion to dismiss.


 We must determine
whether the trial court properly denied Appellants' motion to dismiss. We conclude the trial court
erred because, as applied to the facts of this case,


 Section 74.351 (1) mandates dismissal and (2) is
not unconstitutional.

(1)       Section 74.351 Mandates Dismissal
            Section 74.351(a) of the Texas Civil Practice and Remedies Code establishes the 120-day
deadline:
In a health care liability claim, a claimant shall, not later than the 120th day after the
date the claim was filed, serve on each party or the party's attorney one or more
expert reports, with a curriculum vitae of each expert listed in the report for each
physician or health care provider against whom a liability claim is asserted. . . . 
Each defendant physician or health care provider whose conduct is implicated in a
report must file and serve any objection to the sufficiency of the report not later than
the 21st day after the date it was served, failing which all objections are waived. 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Absent an agreement among the parties for an
extension of time to serve the reports, the trial court has no discretion but to dismiss the case with
prejudice and to award reasonable attorney's fees and costs of court if the claimant fails to meet this
deadline:
(b) If, as to a defendant physician or health care provider, an expert report has not
been served within the period specified by Subsection (a), the court, on the motion
of the affected physician or health care provider, shall, subject to Subsection (c), enter
an order that:
 
(1) awards to the affected physician or health care provider reasonable
attorney's fees and costs of court incurred by the physician or health care
provider; and
 
(2) dismisses the claim with respect to the physician or health care provider,
with prejudice to the refiling of the claim.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2005) (emphasis added).
            Section 74.351 provides the only two means of obtaining an extension of the expert report
deadline. First, the parties may agree to an extension: "The date for serving the report may be
extended  by  written  agreement  of  the  affected  parties."  Tex.  Civ.  Prac.  &  Rem.  Code  Ann.
§ 74.351(a). Second, subsection (c) provides for the only extension available without such an
agreement:
If an expert report has not been served within the period specified by Subsection (a)
because elements of the report are found deficient, the court may grant one 30-day
extension to the claimant in order to cure the deficiency. If the claimant does not
receive notice of the court's ruling granting the extension until after the 120-day
deadline has passed, then the 30-day extension shall run from the date the plaintiff
first received the notice.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2005). This provision appears to
serve as an after-the-fact extension, a second chance at getting the report right. That is, the claimant
still must serve the expert report by the 120-day deadline, but, if the trial court determines the timely-filed report is deficient, it may grant an extension in which the claimant may cure any deficiencies
in the report.
            Since Brennan concedes he failed to serve his reports on Appellants by October 29 and had
no agreed extension with the doctors, the only possible statutory relief from mandatory dismissal of
his claims against Appellants is found in subsection (c). So, here, the application of Section
74.351(b) is clear: Brennan's claims survive Appellants' motion to dismiss only if Section 74.351(c)
applies.
            Applying the traditional rules of statutory construction,


 we agree with Appellants that,
properly construed, Section 74.351 mandates dismissal on these facts, since all parties agree that
Brennan failed to serve the requisite reports on Appellants by the deadline. Looking first to the plain
and common meaning of Section 74.351(c)'s language in the context of the entire statute, we note
that Section 74.351(c) applies only when "an expert report has not been served within" the 120-day
period "because elements of the report have been found deficient." Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(c) (emphasis added). This clearly requires a timely-served report that is deficient.
            We, therefore, conclude that the subsection (c) extension is available only when a timely-served report does not meet the statutory definition of an "expert report" because it has one or more
deficiencies in its contents; subsection (c) does not apply to a report not served by the deadline. See
Manor Care Health Servs. v. Ragan, No. 14-05-00658-CV, 2006 Tex. App. LEXIS 203, at *9 (Tex.
App.—Houston [14th Dist.] Jan. 12, 2006, no pet. h.); Mokkala, 178 S.W.3d at 74. If a timely-served report is later found to be inadequate, then the trial court may, in its discretion, grant a thirty-day extension to cure the deficiencies. This construction permits each part of the statute to be
meaningful in light of the other portions of the statute.
            This construction is also consistent with the legislative history of the 2003 amendments to
former Article 4590i. As the Houston-Fourteenth Court points out, Representative Joe Nixon, Chair
of the House Committee on Civil Practices, presented House Bill 4 and explained that, if the bill
were passed, it meant that, if an attorney missed the deadline for the expert report, the plaintiff would
be barred from prosecuting that claim. Mokkala, 178 S.W.3d at 74 (including extensive discussion
of legislative background of Section 74.351). An extensive article written on the amendments also
takes the position that Section 74.351(c) does not apply to this situation: "No extension is available
for a failure to file any report." Michael S. Hull, et al., House Bill 4 and Proposition 12: An
Analysis with Legislative History, 36 Tex. Tech L. Rev. 1, 207 n.230 (Supp. 2005).
            The facts before us are not such as would authorize an extension under Section 74.351(c). 
That being the case, the trial court was bound by Section 74.351(b)'s mandatory dismissal provision. 
The provisions leave no room for a construction other than the one proposed by Appellants. 
Dismissal is required, unless the statute is unconstitutional.
(2)       Section 74.351 Is Not Unconstitutional
            Brennan claims that Section 74.351, as applied, denies him due process and due course


 of
law. Although arising in an unorthodox manner, Brennan's constitutional challenge appears to have
been properly before the trial court.


 Additionally, Appellants did not move to strike or otherwise
object to the amendments raising the constitutional issues.
            The United States Constitution provides that "[n]o State . . . shall deprive any person of life,
liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. These words
"require that deprivation of life, liberty or property by adjudication be preceded by notice and
opportunity for hearing appropriate to the nature of the case." Logan v. Zimmerman Brush Co., 455
U.S. 422, 428 (1982) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313
(1950)). A restriction on litigants' use of established adjudicatory procedures denies due process
when such restriction is "the equivalent of denying them an opportunity to be heard upon their
claimed right[s]." Boddie v. Connecticut, 401 U.S. 371, 380 (1971).
            A cause of action is a species of property protected by the Fourteenth Amendment's Due
Process Clause. See Logan, 455 U.S. at 428. Therefore, statutory procedures that deprive someone
of a statutory right must be held up to constitutional analysis. Id. at 432. Due process requires that
state procedures must provide proper procedural safeguards before a claimant's property interest is
destroyed. Id.; Bank of Am. Nat'l Trust & Sav. Ass'n v. Dallas Cent. Appraisal Dist., 765 S.W.2d
451, 453 (Tex. App.—Dallas 1988, writ denied). We must examine Section 74.351 for the presence
or absence of those "proper procedural safeguards."
            When dealing in the context of restrictions placed on healthcare liability claims, we operate
with two general principles in mind. First, "there are constitutional limitations upon the power of
courts . . . to dismiss an action without affording a party the opportunity for a hearing on the merits
of his [or her] cause." Walker v. Guiterrez, 111 S.W.3d 56, 66 (Tex. 2003) (quoting TransAmerican
Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 917–18 (Tex. 1991)). Second, the filing of a frivolous
lawsuit can be misconduct subject to sanction. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 878 (Tex. 2001).
            We begin our analysis presuming that the statute is constitutional. See Tex. Gov't Code
Ann. § 311.121; Walker, 111 S.W.3d at 66; Enron Corp. v. Spring Indep. Sch. Dist., 922 S.W.2d
931, 934 (Tex. 1996). A mere difference of opinion, where reasonable minds could differ, is an
insufficient basis for striking down legislation as arbitrary or unreasonable. Sax v. Votteler, 648
S.W.2d 661, 664 (Tex. 1983); Smith v. Davis, 426 S.W.2d 827, 831 (Tex. 1968).  
            No cases have specifically measured Section 74.351 against due process requirements. We,
therefore, look to cases addressing Section 74.351's predecessor, Article 4590i. Former Article
4590i withstood constitutional challenges in a number of cases and on several different grounds. See
Perry  v.  Stanley,  83  S.W.3d  819,  825  (Tex.  App.—Texarkana  2002,  no  pet.);  Knie  v. Piskun,
23 S.W.3d  455,  467  (Tex.  App.—Amarillo  2000,  pet.  denied);  Andress  v.  MacGregor  Med.
Ass'n, 5 S.W.3d 855, 860 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Horsley-Layman v.
Angeles, 968 S.W.2d 533, 537 (Tex. App.—Texarkana 1998, pet. denied); Odak v. Arlington Mem'l
Hosp., 934 S.W.2d 868, 873 (Tex. App.—Fort Worth 1996, writ denied).
            The Texas Supreme Court confirmed these conclusions, holding that the former Article
4590i's failure to require notice of noncompliance before a motion to dismiss is filed did not render
the statute unconstitutional. See Walker, 111 S.W.3d at 65.


 The Court went on to explain that due
process does not require "prior notice that the law is serious about a clearly stated consequence." 
Id. at 66.
            Similarly, due process does not require additional or broader grounds for extending the
clearly stated service deadline or relief from the clearly stated consequences of failing to meet that
deadline. Here, we have a situation arising from a possibly malfunctioning facsimile machine on
the last day of the allowable time period. As a result of this last-minute problem, Brennan failed to
serve the report on Appellants. Section 74.351 need not provide an exception geared toward such
misfortune in order to provide constitutionally adequate safeguards. The trial court must dismiss the
claim if an expert report has not been served by the deadline. Mandatory dismissal is a "clearly
stated consequence" for failing to comply with the statutory deadline.
            Applying the reasoning in Walker to this statute and to these facts, we conclude that statute
need not provide exceptions that would encompass any conceivable complication in order to pass
constitutional muster.


 We overrule Brennan's contention that due process requires that Section
74.351 provide a claimant with additional extensions or a means of seeking relief from the
consequences for failure to meet the statutory deadline. Recognizing the two general
considerations—that the State has a legitimate interest in placing restrictions on the filing of
healthcare liability claims but that a court's power to dismiss a claim is limited—we conclude that
Section 74.351 is not unconstitutional as applied to Brennan and that, therefore, a contrary
conclusion could not serve as a basis for the trial court's denial of Appellants' motion to dismiss
Brennan's claims.
Conclusion
            As written, Section 74.351(b) requires dismissal of a healthcare liability claim if no expert
report  is  served  by  the  120-day  deadline.  Section  74.351(b)  is  expressly  made  subject  to
subsection (c), which authorizes a thirty-day extension under narrow circumstances not presented
here—Brennan concedes he did not timely serve Appellants with an expert report of any kind. There
is no provision under which Brennan could seek or be granted an extension. Section 74.351(c)
applies only when an expert report was not "served" because it was inadequate, not when no report
was served at all.
            The absence of such an extension is not unconstitutional as applied to Brennan. The trial
court's denial of Appellants' motion to dismiss was error. Therefore, we reverse the trial court's
denial of Appellants' motion to dismiss and remand this cause to the trial court for dismissal of 
Brennan's claims against Appellants and for further proceedings regarding statutory attorney's fees
and costs.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          October 19, 2005
Date Decided:             April 27, 2006