ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

August 14, 2008

The Honorable Florence Shapiro
Chair, Committee on Education
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0653

Re: Validity of collecting a Regional Transportation Authority's sales and use tax at different levels in separate subregions (RQ-0677-GA)

Dear Senator Shapiro:

You inquire about the imposition of a Regional Transportation Authority's ("RTA") "sales and use tax at different levels in separate Subregions within the authority."[1] You specifically ask about the satisfaction of the constitution's equal and uniform taxation requirement if the sales and use tax "is collected at a uniform voter-approved rate within a Subregion of an RTA but at different rates in different Subregions, all of which receive different approved levels of service that take into account their disparate tax levels[.]" Request Letter, *supra* note 1, at 2; *see also* TEX. CONST. art. VIII, § 1 (equal and uniform provision). Though your question expressly inquires about subregions, it appears to be premised on an assumption that any municipality may create its own subregion through which to participate in an RTA. *See* Request Letter, *supra* note 1, at 2 (stating that "[s]eemingly, . . . a municipality . . . could form a Subregion to participate in an RTA . . .[,]" and "within an RTA various municipalities could participate at separate levels of service at different tax rates").

Because of that assumption, it is helpful to have an understanding of the geography of RTAs before addressing your question. RTAs are governed by chapter 452, Transportation Code. *See generally* TEX. TRANSP. CODE ANN. ch. 452 (Vernon 2007 & Supp. 2007) (titled "Regional Transportation Authorities"). Chapter 452 authorizes an RTA to be initiated from "each subregion of a metropolitan area,"[2] or from only one subregion.[3] *Id.* § 452.701(a) (Vernon 2007); *see id.*

_____

[1]Letter from Honorable Florence Shapiro, Chair, Committee on Education, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 2 (Feb. 15, 2008) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

[2]Chapter 452 defines "metropolitan area" as a "federal standard metropolitan statistical area having a population of more than 500,000, not more than 60 percent of which resides in municipalities having a population of more than 350,000." TEX. TRANSP. CODE ANN. § 452.001(7) (Vernon 2007).

[3]The predecessor statute to chapter 452, Texas Revised Civil Statute article 1118y, was enacted to authorize the creation of a regional authority consisting of both Dallas and Tarrant Counties, with interim boards for each county.

(continued...)

§§ 452.701(c) (providing that if "one subregion establishes an authority, the remaining subregion may establish a separate subregional authority"), 452.001(1)(B) (defining "authority" to include "an authority . . . consisting of one subregion"). For its purposes, chapter 452 defines "subregion" as "a principal municipality, the county of the principal municipality, *and* any municipality or unit of election included in the boundaries of a subregion by the creating entity . . . and confirmed at an election."[4]  *Id.* § 452.001(12) (emphasis added).  Separately, the territory of a proposed RTA includes *all* of the territory in the "county of the principal municipality" and "each unit of election that has the majority of its population in [that] county." *Id.* § 452.704(a)(1)–(2).  Upon the results of the confirmation election, the RTA is authorized in the whole of the county territory and the units of election in which voters approve the RTA. *See id.* § 452.717(a); *see also id.* § 452.716(a) (requiring that the confirmation election be conducted "so that the votes are separately tabulated and canvassed in each participating unit of election").  Thus, the territory of an RTA will necessarily include and overlap with the territory of a county and participating municipalities.  At the same time, the territory of the RTA itself could consist of one or more subregions.  While chapter 452 authorizes a "contiguous municipality"[5] to create its own RTA, it does not authorize any municipality to create its own subregion that may then participate in an RTA.  Chapter 452 does not equate a municipality with a subregion.

RTAs are created to "provide public and complementary transportation services in the area." *Id.* § 452.701(a); *see id* § 452.056(a)(1) (authorizing authority to operate and maintain a public transportation system).  Toward that purpose, an RTA is authorized to collect a transit sales and use tax. *See id.* § 452.401(a) (authorizing executive committee to impose a sales and use tax for the authority at specified rates).  The imposition of the sales and use tax must be approved at an election.

---

[3](...continued)
*See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.B.1079, 66th Leg., R.S. (1979) [Bill Analysis labeled "SB 1079-63," dated 5/23/79] (stating that "[t]his bill allows the creation of a regional transportation authority in the Dallas-Fort Worth area").  The Lone Star Transportation Authority, which would have included both counties, was not approved by the voters. *See* Brief from Dallas Area Rapid Transit Authority, to Honorable Greg Abbott, Attorney General of Texas, at Appendix Tab 2 (Mar. 28, 2008) (on file with the Opinion Committee) [hereinafter DART Brief].  We are informed that the Dallas Area Rapid Transit (DART) is a "regional transportation authority comprised of one subregion." *Id.* DART Brief, at 4.  And we are aware that the Fort Worth Transportation Authority has created its own authority with boundaries that include all of Tarrant County. *See* Tex. Att'y Gen. LO-90-65, at 1.

[4]When initiated, the proposed territory of an RTA includes all territory in the county of the principal municipality and all territory in each unit of election that has a majority of its population in the county of the principal municipality. *See* TEX. TRANSP. CODE ANN. § 452.704(a) (Vernon 2007) (providing for boundaries of RTA).  In each unit of election in which the voters approve the creation of the RTA, the RTA is confirmed. *See id.* § 452.717(a).  A "unit of election" is defined as a "principal municipality;" a "designated unincorporated area created by the commissioners court of a county of a principal municipality;" or "any other municipality located in the territory of an [RTA]." *Id.* § 452.001(14).

[5]A "contiguous municipality" is a "municipality that has a boundary contiguous with a principal municipality and having: (A) a population of more than 250,000 . . .; or (B) boundaries extending into two or more adjacent counties, two of which counties include a principal municipality." *Id.* § 452.001(3).  A contiguous municipality is authorized to create a separate subregional authority. *See id.* § 452.701(d).  A separate subregional authority created by a contiguous municipality would not "participate in" another RTA.

*See id.* § 452.401(b). The rate may not exceed a rate that "when combined with the rates of all sales and use taxes imposed by other political subdivisions . . . having territory in the [RTA] exceeds two percent in any location in the [RTA]." *Id.* § 452.403(a); *see also id.* § 452.401(a) (authorizing rate of between one-quarter of one percent to one percent); TEX. TAX CODE ANN. §§ 151.051 (Vernon 2008) (imposing state sales and use tax at six and one quarter percent), 321.101 (authorizing municipal sales and use tax), 321.103(a) (authorizing municipal sales and use tax "at the rate of one percent"). Chapter 452 contains specific provisions to accommodate the two percent maximum when a municipality that itself imposes a special sales and use tax joins the RTA. TEX. TRANSP. CODE ANN. § 452.403(b)–(c) (Vernon 2007); *see id.* § 452.6025(d) (Vernon Supp. 2007) (providing that an election in municipality to confirm addition of municipality to RTA is "to be treated for all purposes as an election to reduce the rate of the municipality's special sales and use tax . . . to the highest rate that will not impair the imposition of the [RTA's] sales and use tax"). Chapter 452 also authorizes the governing body of the RTA to "direct the comptroller to collect the [RTA's] sales and use tax at different rates in different subregions of the [RTA]." *Id.* § 452.406(a). It is this potential difference in tax rates that gives rise to your question under article VIII, section 1(a). *See* Request Letter, *supra* note 1, at 2 (asking whether "the constitution's 'equal and uniform' requirement [is] satisfied if the transit sales and use tax is collected at a uniform voter-approved rate within a Subregion of an RTA but at different rates in different Subregions").

Article VIII, section 1(a) provides that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). Texas courts have long recognized that absolute equality and uniformity in taxation is an unattainable ideal and not required by the constitution. *Rosenburg v. Weekes*, 4 S.W. 899, 901 (Tex. 1887); *Whelan v. State*, 282 S.W. 2d 378, 380 (Tex. 1955); *Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 234 (Tex. App.—Fort Worth 1989, writ denied). The Texas Supreme Court has stated:

> Taxes are said, within the meaning of the constitution, to be 'equal and uniform,' when no person nor class of persons in the taxing district, whether a state, county, or other municipal corporation, is taxed at a different rate than are other persons in the same district upon the same value or the same thing, and where the objects of taxation are the same by whomsoever owned, or whatever they be.

*Norris v. City of Waco*, 57 Tex. 635, 641, 1882 WL 9558, at *5 (1882). The equal and uniform requirement "does not prevent the reasonable classification of persons and property for taxation." *Tarrant Appraisal Dist.*, 767 S.W.2d at 234. The equal and uniform mandate requires only that all persons falling within the same class be taxed alike. *Smith v. Davis*, 426 S.W.2d 827, 833–34 (Tex. 1968); *Rylander v. B & A Mktg. Co.*, 997 S.W.2d 326, 333 (Tex. App.—Austin 1999, no pet.); *Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 240 (Tex. App.—Austin 1996, writ denied) (citing *Hurt v. Cooper*, 110 S.W.2d 896, 901 (Tex. 1937)). Thus, article VIII, section 1(a) is satisfied when the tax classification is not unreasonable, arbitrary, or capricious and when it operates equally on persons or property within the class. *See Tarrant Appraisal Dist.*, 767 S.W.2d at 234.

Moreover, a court in considering whether a particular tax classification conforms to article VIII, section 1(a) would begin with a presumption of validity. *See Smith*, 426 S.W.2d at 831. Under such a presumption, a party mounting a challenge under article VIII, section 1(a) would bear the burden of demonstrating there was no reasonable basis for the classification. *See Rylander*, 997 S.W.2d at 333. A "mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Smith*, 426 S.W.2d at 831. Courts entertain the "'strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.'" *Id.* (quoting *Tex. Nat'l Guard Armory Bd. v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939) (citations omitted).

Under article VIII, section 1(a), a tax imposed by a taxing entity within its territory that equally and uniformly operates on all property or persons in the taxing entity is not constitutionally infirm. *See Norris*, 1882 WL 9558, at *5. ("Taxes are said . . . to be 'equal and uniform,' when no person nor class of persons in the taxing district . . . is taxed at a different rate . . . ."); *Smith*, 426 S.W.2d at 834 (agreeing with trial court's finding and stating that assessment of property "was uniform and equal with respect to other property in Bexar County and in proportion to the value of the property assessed. Thus the assessments are equal and uniform within the meaning of the constitution."). Situations involving two taxing entities that have overlapping territory and that each impose a tax within its respective territory so that persons and property within both taxing entities pay taxes to each entity similarly do not violate article VIII, section 1(a) so long as each entity's tax is equal and uniform within the entity. *See City of Pelly v. Harris County Water Control & Imp. Dist. No. 7*, 198 S.W.2d 450, 454 (Tex. 1946) (upholding under article VIII, section 1(a) taxation of property by city and special district); *Kuhlmann v. Drainage Dist. No. 12 of Harris County*, 51 S.W.2d 784, 788 (Tex. Civ. App.—Galveston 1932, writ ref'd) (upholding taxation of property by city and by drainage district under article VIII, section 1(a)). Applying these legal principles, then, an RTA consisting of only one subregion that imposes a sales and use tax equally and uniformly within that subregion does not present an article VIII, section 1(a) problem. And a situation involving different municipalities within an RTA in which each municipality imposes its own sales and use tax at a different rate from other municipalities in the RTA, but equally and uniformly within its municipal territory, is also not prohibited by article VIII, section 1(a). Thus, to the extent you are concerned about different municipalities within an RTA having different municipal sales and use tax rates, or about the overlap between the RTA's sales and use tax rate with a municipality's sales and use tax rate, these differences are not prohibited by article VIII, section 1(a).[6]

---

[6]Because you ask about different tax rates in different subregions, it does not appear that you inquire about an RTA that consists of only one subregion that imposes, within the RTA, an RTA sales and use tax at different rates on different municipalities. *See* Request Letter, *supra* note 1, at 2 (asking whether a tax "collected at a uniform voter-approved rate within a Subregion of an RTA but at different rates in different Subregions, all of which receive different approved levels of service that take into account their disparate tax levels"). As we do not understand this to be your concern, we do not offer an official opinion on the question. But to the extent you may be concerned about such a scenario, it may be constitutionally suspect under article VIII, section 1(a) because the RTA's sales and use tax would not fall equally upon all persons within the RTA. *See Norris*, 1882 WL 9558, at *5. ("Taxes are said . . . to be 'equal and uniform,' when no person nor class of persons in the taxing district . . . is taxed at a different rate . . . .").

The express question you present involves an RTA that consists of more than one subregion and that imposes a sales and use tax at different rates in the different subregions. *See* Request Letter, *supra* note 1, at 2. However, you do not provide information about a particular RTA nor are we aware of any existing RTA that consists of more than one subregion. *See supra* pp.3–4 (describing origin of chapter 452 to accommodate the Dallas/Fort Worth metropolitan area); *see also* DART Brief, *supra* note 3, at 4 (stating that DART is a "regional transportation authority comprised of one subregion"). Thus, we can advise you only generally about such a hypothetical RTA.

As noted above, under article VIII, section 1(a), courts allow tax classifications that are reasonable and impose obligations that fall equally upon members of a class. *See supra* pp. 3–4. If, as you suggest, the tax rate within each subregion operates equally within the subregion, we believe a court could find the tax for each subregion falls equally upon the persons and property of that subregion. *See* Request Letter, *supra* note 1, at 2 (inquiring about a sales and use tax "collected at a uniform voter-approved rate within a Subregion"). Such a finding would leave a reviewing court with the remaining determination about the reasonableness of the classification—here the different tax treatment based on different subregions.

The difference need not be significant. *See Fairmont Dallas Rests., Inc. v. McBeath*, 618 S.W.2d 931, 933 (Tex. Civ. App.—Waco 1981, no writ) ("The difference between the subjects taxed need not be great, and if any reasonable distinction can be found, the duty of the court is to sustain the classification embodied in the law.") (citing *Hurt v. Cooper*, 110 S.W.2d 896, 904 (Tex. 1937) (stating: "It would not be argued that the Legislature is without power to levy a tax upon dry goods merchants without at the same time levying a like tax upon grocery merchants. The fact that the merchants not taxed, or those exempted from the tax, sell a different kind of goods from those which are taxed, is an all-sufficient justification of the classification or exemption.")); *Bullock v. ABC Interstate Theaters, Inc.*, 557 S.W.2d 337, 341 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) ("The courts will not strike down the tax statute where there is a real difference to justify the separate treatment adopted by the Legislature."). For instance, a court might consider whether geographic and demographic differences between subregions provide reasonable justification for different tax rates. A court might also consider whether differences in transportation services provided to the different subregions suffice as reasoned justification to authorize different tax rates. *See Dancetown, U.S.A., Inc. v. State*, 439 S.W.2d 333, 336–37 (Tex. 1969) (determining that differences in commodities sold or services rendered were proper basis for classification). *See generally Norris*, 1882 WL 9558, at *5 (stating that "equal and uniform" language does not mean that the "pecuniary benefit to be derived by every person who pays taxes shall be equal"); *Wheeler v. City of Brownsville*, 220 S.W.2d 457, 461 (Tex. 1949) (recognizing that "some persons will derive greater pecuniary benefit from the expenditure of money for . . . public purposes than will others").

Thus, under article XIII, section 1(a), upon a determination that the tax is uniform within each subregion and that the different tax rates in the subregions are based on reasonable and nonarbitrary distinctions, a court could well uphold a difference in tax rates between the subregions.

## S U M M A R Y

Texas Constitution, Article VIII, section 1(a) requires that all taxation be equal and uniform. Article VIII, section 1(a) authorizes the classification of persons and property for taxation when the tax classification is not unreasonable, arbitrary, or capricious and when the tax operates equally on all persons or property within the class.

Chapter 452 of the Transportation Code authorizes a Regional Transportation Authority ("RTA") consisting of more than one subregion to collect a sales and use tax at different rates in the different subregions. For any RTA organized under chapter 452 that has more than one subregion and that collects the sales and use tax at different rates from the different subregions, the difference in tax rates could be upheld under article VIII, section 1(a) if the tax falls equally on people and property within each subregion and the different tax treatment by each subregion is reasonable.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee