

March 8, 2023

The Honorable Paul Bettencourt
Chair, Senate Committee on Local Government
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

    **Opinion No. KP-0437**

    Re: Whether a public facility corporation created under Local Government Code chapter 303 has authority to acquire real property for leaseholds outside of its sponsor's geographic jurisdiction and whether such acquisition furthers a public interest (RQ-0481-KP)

Dear Senator Bettencourt:

    You ask about the authority of a public facility corporation ("PFC") created by a sponsoring governmental entity under Local Government Code chapter 303 to acquire for leasehold real property outside of the sponsoring entity's jurisdictional boundaries.[1] You tell us that leasehold interests connected with such properties are "taxed in the name of the PFC and [are] 100% exempt from property taxes."[2] Request Letter at 2. As you explain it, the tax exemption

---

[1]*See* Letter from Honorable Paul Bettencourt, Chair, Senate Comm. on Loc. Gov't, to Honorable Ken Paxton, Tex. Att'y Gen. at 3 (Oct. 10, 2022), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2022/RQ0481KP.pdf ("Request Letter"). You use the term "jurisdictional boundaries" in your question. *See id.* at 1, 3. Yet the term "jurisdiction" has a broad meaning capable of myriad constructions. From your letter, we understand you to mean the sponsoring entity's geographical boundaries or territory. *See id.* at 1–3.

[2]By successive references to other statutes, Local Government Code subsection 303.042(f) changes the usual tax treatment of a leasehold interest held by a private entity under Tax Code subsection 25.07(a). *See* TEX. LOC. GOV'T CODE § 303.042(f). Tax Code subsection 25.07(a) provides that when real property that is exempt from taxation to the property owner is leased, the lease is not exempt to the lessee. *See* TEX. TAX CODE § 25.07(a) (applying to leases of a duration of at least one year). Subsection 303.042(f) states that a leasehold or other possessory interest in the real property of the public facility granted by the PFC "shall be treated in the same manner as a leasehold or other possessory interest in real property granted by an authority under Section 379B.011(b)." TEX. LOC. GOV'T CODE § 303.042(f) (referring to subsection 379B.011(b) of the same Code). Subsection 379B.011(b) then refers to Local Government Code section 505.161, which relates to development corporations and states that subsection 25.07(a) does "not apply to a leasehold or other possessory interest granted by a Type B corporation during the period the corporation owns projects on behalf of the authorizing municipality." *Id.* § 505.161(a)(2); *see also id.* § 379B.011(b). We are aware that the Legislature is already considering legislation amending subsection 303.042(f). *See* Tex. S.B. 199, 88th Leg., R.S. (2022).Though your concern centers around the taxation framework, you do not ask about a tax exemption. *See* Request Letter at 1–3. This office generally leaves the determination of a tax exemption to the chief appraiser. *See* Tex. Att'y Gen. Op. No. GA-0537 (2007) at 3 (stating that "whether any specific property is exempt from taxation depends on the facts and circumstances and is initially determined by the chief appraiser of the appraisal district").

causes a loss of revenue for the territory in which the leasehold property is located, which territory must then "make up for in tax and fee increases on its own citizens." *Id.* You state that, meanwhile, the sponsoring governmental entity "receives lucrative income from fees paid by the recipients of the tax exemption." *Id.*

In particular, you present your questions in the context of a PFC created and sponsored by a municipal management district. *See id.* at 2–3. You relay that a particular PFC is "approving development agreements for multifamily residential developments" and "acquir[ing] existing multifamily residential properties outside of" the municipal management district's territory. *Id.* at 3 (discussing the SH 130 Municipal Management District No. 1 and its PFC, the Texas Essential Housing PFC). You reiterate your taxation concerns by explaining that "[t]he effect of these types of acquisitions is the granting of significant property tax exemptions to private developers in taxing jurisdictions where both the local taxing units and taxpayers have no opportunity to provide input on the effects" of such an arrangement. *Id.* You state that allowing a PFC to extend a tax exemption to a property not within the sponsoring governmental entity's jurisdiction "flies in the face of good public policy . . . ." *Id.* at 2.

**Public Facility Corporations**

Found in Local Government Code chapter 303, the Public Facility Corporation Act governs PFC's. *See generally* TEX. LOC. GOV'T CODE §§ 303.001–.124. Chapter 303's stated purpose is to authorize the "creation and use of public facility corporations with the broadest possible powers to finance or to provide for the acquisition, construction, rehabilitation, renovation, repair, equipping, furnishing, and placement in service of *public facilities* in an orderly, planned manner and at the lowest possible borrowing costs." *Id.* § 303.002(a) (emphasis added). A "public facility" is "any real, personal, or mixed property, or an interest in property devoted or to be devoted to public use, and authorized to be financed, refinanced, or provided by sponsor obligations or bonds issued under [chapter 303]." *Id.* § 303.003(7).

Chapter 303 authorizes a sponsoring entity to create a PFC. *See id.* § 303.021(a). A sponsor can be a "a municipality, county, school district, housing authority, or special district . . . ." *Id.* § 303.003(11). A special district includes a "district created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution[.]" *Id.* § 303.003(10)(A). A PFC acts on behalf of its sponsor to "acquire, construct, rehabilitate, renovate, repair, equip, furnish, or place in service public facilities[.]" *Id.* § 303.021(b)(1). And chapter 303 broadly grants the PFC "the rights and powers *necessary or convenient* to accomplish the [PFC's] purposes," including a long list of specific powers. *Id.* § 303.041(a) (emphasis added); *but see id.* §§ 303.045 (providing that the sponsor "in its sole discretion" may alter the PFC's organization or activities subject to certain limitations), 303.041(c) (prohibiting the sponsor from delegating "the power of taxation or eminent domain, a police power, or an equivalent sovereign power of this state or the sponsor").

From chapter 303, we generally conclude that because a "public facility" includes real property or "an interest in property," it can include a leasehold interest in property. *Id.* § 303.003(7); *see generally JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n, Inc.*, 644 S.W.3d 179, 186 (Tex. 2022) (noting that a lease is a contract in the right to use and occupy real property in exchange for consideration). And as a PFC may acquire, furnish or place in service

public facilities on behalf of its sponsor, a PFC has authority to acquire, furnish, or place in service a leasehold interest in property. But chapter 303 is silent with respect to the geographical limitations of a PFCs authority.[3] *See* TEX. LOC. GOV'T CODE §§ 303.001–.124.

### Municipal Management Districts

As you are concerned about a particular PFC acting on behalf of a municipal management district, we consider Local Government Code chapter 375, which governs such districts. *See* Request Letter at 2–3; TEX. LOC. GOV'T CODE §§ 375.001–.357. Chapter 375 provides that "[t]he creation of a municipal management district is declared to be essential to the accomplishment of the purposes of Article III, Section 52, [and] Article XVI, Section 59 . . . of the Texas Constitution and to the accomplishment of the other purposes stated in [chapter 375]." TEX. LOC. GOV'T CODE § 375.001(a). A municipal management district created under one of these two constitutional provisions is a special district and therefore can be the sponsoring entity of a PFC under Local Government Code chapter 303. *See supra* at 3.

As a general matter, chapter 375 authorizes a municipal management district to acquire "real property or any interest in real property in connection with an improvement, project, or services authorized by this chapter, Chapter 54, Water Code, . . . or Chapter . . . 441, Transportation Code," essentially giving a municipal management district the powers of a municipal utility district and a road utility district. TEX. LOC. GOV'T CODE § 375.112(a)(3); *see also* TEX. WATER CODE §§ 54.001–.813 (providing for municipal utility districts); TEX. TRANSP. CODE §§ 441.001–.233 (providing for road utility districts). Additionally, a "district may acquire . . . and may hold, use, sell, lease, or dispose of real . . . property . . . necessary, convenient, or useful for the full exercise of its powers" under chapter 375. TEX. LOC. GOV'T CODE § 375.092(e).

Relevant to your question about geographical territory, chapter 375 grants a municipal management district power to "acquire, construct, complete, develop, own, operate, and maintain permanent improvements and provide services that directly benefit property in the district, regardless of whether the improvements or services are located *inside or outside its boundaries*." *Id.* § 375.092(f) (emphasis added). In addition, a municipal management district has powers related to levying and collecting special assessments for projects and services that confer a special benefit on property in the district. *See id.* § 375.111. With respect to such special assessments, a municipal management district board may "provide improvements and services to an area *outside the boundaries of the district*." *Id.* (emphasis added). In these provisions, the Legislature authorizes a municipal management district to maintain permanent improvements and provide services outside

---

[3]Given this silence, we accept the statute as we find it and "refrain from rewriting the Legislature's text." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017). Moreover, we leave policy considerations to the Legislature. *See Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968) ("The wisdom . . . of the law is the Legislature's prerogative[.]"). We note that the Legislature is considering a bill that would expressly authorize a PFC to own a multifamily residential development and that would impose limits on the location of the multifamily residential development. *See* Tex. H.B. 2071, 88th Leg., R.S. (2023).

of its territorial boundaries.[4] *See id.* §§ 375.092(f), .111. A court could have a basis to conclude that a PFC sponsored by a municipal management district is authorized to acquire property to provide and maintain improvements and services outside the municipal management's geographical territory. At the same time, the fact that the Legislature affirmatively gave municipal management districts certain rights and privileges, does not necessarily mean that the Legislature affirmatively intended this quasi-governmental entity to pass along all of those rights and privileges to a PFC.[5] Ultimately, this is a fact-based analysis for each municipal management district and a policy question for the Legislature and thus outside the scope of an Attorney General opinion. *See* Tex. Att'y Gen. Op. No. KP-0358 (2021) at 2–3 (stating that attorney general opinions do not address fact questions).

### The SH 130 Municipal Management District

Again, your letter indicates a particular concern about the activities of the PFC sponsored by the SH 130 Municipal Management District No. 1. *See* Request Letter at 3 (inquiring about the Texas Essential Housing PFC). Chapter 3971 of the Special District Local Laws Code governs the SH 130 Municipal Management District No. 1 ("SH 130 MMD"). *See* TEX. SPEC. DIST. CODE §§ 3971.001–.0901. Chapter 3971 provides that the SH 130 MMD is "a special district created under Section 59, Article XVI, Texas Constitution." *Id.* § 3971.0102. Thus, it is a "special district" under Local Government chapter 303 and can therefore be a "sponsor" of a PFC. TEX. LOC. GOV'T CODE § 303.003(10), (11); *see supra* at 3.

The SH 130 MMD has the "powers and duties necessary to accomplish" its purposes. TEX. SPEC. DIST. CODE § 3971.0301. Chapter 3971 states the creation of the SH 130 MMD is "necessary to promote, develop, encourage, and maintain . . . housing . . . in the district." *Id.* § 3971.0103(c). Though nothing in chapter 3971 expressly authorizes the SH 130 MMD to operate outside its geographical territory, it does have authority to "construct, acquire, improve, . . . operate, maintain, or finance an improvement project or services authorized under [chapter 3971] *or Chapter 375*, Local Government Code." *Id.* § 3971.0302(a) (emphasis added). As previously discussed, Local Government Code subsection 375.092(f) and section 375.111 expressly authorize a municipal management district, including one such as the SH 130 MMD, to maintain permanent improvements and provide services outside of its territorial boundaries. *See supra* at 5; *see also supra* at 5, n.4 (discussing the applicability of Water Code section 49.211 and its authority for a district to operate outside of its territory). And we previously determined that a PFC and municipal management district can own a leasehold interest. *See supra* at 5–6. Accordingly, a court would

---

[4]Additionally, a district created under article XVI, section 59 with the powers of a municipal utility district provided by chapter 54 of the Water Code operates under chapter 49 of the Water Code. *See* TEX. WATER CODE § 49.002(a) (providing that chapter 49 "applies to all general and special law districts to the extent that the provisions of this chapter do not directly conflict with a provision in any other chapter of this code or any Act creating or affecting a special law district"); *see also* TEX. SPEC. DIST. CODE § 3971.0102. Water Code section 49.211 expressly authorizes a district to "purchase, construct, acquire, own, operate, maintain, repair, improve, or *extend inside and outside its boundaries* any and all land, works, improvements, facilities, plants, equipment, and appliances necessary to accomplish the purposes of its creation or the purposes authorized by this code or any other law." TEX. WATER CODE § 49.211(b) (emphasis added).

[5]*See supra* note 3.

likely conclude that, as a general matter, a PFC sponsored by the SH 130 MMD may acquire real property or an interest in property outside its geographical territory.

**Benefit Within a Municipal Management District's Geographic Territory**

Your second question and aspects of your third question inquire whether a municipal management district acting outside its geographic territory must demonstrate and determine a benefit to the residents and property owners within its geographic territory and whether ownership of property outside of the district must nonetheless be in the public interest of the municipal management district. *See* Request Letter at 3.

As a general matter, Local Government Code chapter 375 addresses your question. The two subsections that affirmatively speak to a municipal management district's authority outside its boundaries require some finding of benefit. *See* TEX. LOC. GOV'T CODE §§ 375.092(f) (authorizing a municipal management district to operate and maintain permanent improvement and provide services "that *directly benefit property in the district*, regardless of whether the improvements or services are located inside or outside its boundaries" (emphasis added)), 375.111 ("If the board determines that there is a *benefit to the district*, the district may provide improvements and services to an area outside the boundaries of the district." (emphasis added)). But the initial determination about the benefit required by chapter 375 is one for the governing body of the district to make in the first instance, subject to judicial review for abuse of discretion.[6] *See id.* § 375.111 ("If *the board determines* that there is a benefit to the district, the district may provide improvements and services to an area outside the boundaries of the district." (emphasis added)); *see also* Tex. Att'y Gen. Op. Nos. GA-0451 (2006) at 3 ("It is not within the purview of an attorney general opinion to make such determinations for a governmental body . . . ."), KP-0181 (2018) at 3 (recognizing that governmental body's decision is subject to judicial review for abuse of discretion). Moreover, such a determination requires the consideration of fact issues, a task outside the scope of an advisory opinion.[7] *See* Tex. Att'y Gen. Op. No. KP-0088 (2016) at 3 (noting that the investigation and determination of fact questions is outside the purview of an Attorney General opinion).

---

[6]We question, however, whether the board could reasonably determine that the provision of housing in counties well outside the boundaries of the district directly benefits property in the district as required by subsection 375.092(f), particularly when subsection 3971.0103(c) provides that the creation of the district is necessary to promote, develop, encourage, and maintain housing *in* the district. In other words, the two sections must be harmonized, with any conflict resolved in favor of chapter 3971. *See* TEX. SPEC. DIST. CODE § 3971.0107 ("Except as otherwise provided by this chapter, Chapter 375, Local Government Code, applies to the district.").

[7]This opinion may not be construed to limit this agency's determination in its review of the legality of the issuance of bonds, which necessarily includes the consideration of facts regarding the particular project to be financed and the reasonableness of any benefit determination.

# S U M M A R Y

Local Government Code chapters 303 and 375 respectively govern public facility corporations (PFCs) and municipal management districts (MMDs), including authorizing the creation of a PFC by a MMD. A court could conclude that, as a general matter, the two chapters allow a PFC to acquire real estate for leasehold outside its geographic boundaries. Whether a PFC should have this authority and the limitations of such authority are policy questions for the Legislature, especially when impacting taxing authority for another district.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT E. WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee