**Affirmed; Opinion Filed December 31, 2020**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-01057-CR**

**No. 05-19-01059-CR**

**TAVARIO JERMAINE SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Collin County, Texas**
**Trial Court Cause Nos. 001-87850-2018 & 001-87851-2018**

## OPINION

Before Justices Myers, Nowell, and Evans
Opinion by Justice Myers

Appellant Tavario Jermaine Smith was convicted following a bench trial of

possession of marijuana in an amount less than two ounces[1] and unlawful carrying

of a weapon.[2] He was sentenced to twenty days' confinement in the county jail, a

$500 fine, court costs for each offense, and ordered to forfeit the seized weapons. In

four issues, he argues (1) the State failed to prove he possessed marijuana as that

term is now defined by statute; (2) the evidence is insufficient to support the

[1] 05-19-01057-CR

[2] 05-19-01059-CR

possession of marijuana conviction; (3) the Fifth and Eighth Amendments of the U.S. Constitution prohibit punishing him; and (4) he was not arraigned for and did not enter a plea to the offense of unlawful carrying of a weapon.  We affirm.

## I.
## H.B. 1325

In his first issue, appellant argues the State failed to prove he possessed marijuana as that term is now defined by statute, i.e., as having a THC (tetrahydrocannabinol) concentration of more than 0.3%.

This issue stems from the passage by the Texas Legislature on May 22, 2019, of H.B. 1325, which regulates the growth, production, and consumption of legal hemp products in Texas.  *See* Act of May 22, 2019, 86th Leg., R.S., ch. 764, 2019 Tex. Sess. Law Serv. 2084, 2100.  H.B. 1325 passed while appellant's case was pending, taking effect on June 10, 2019.  *Id*.

Defense counsel objected at trial—held in August of 2019—to the admission of the marijuana evidence, State's exhibit 3, arguing H.B. 1325 made it lawful to possess marijuana with a THC concentration of 0.3% or less.  He also argued the State failed to prove the THC concentration of the marijuana and that, without evidence of the THC concentration, the marijuana was inadmissible because the State failed to prove it was, in fact, marijuana.  The trial court heard arguments from counsel regarding whether the State was required to prove the THC concentration of the marijuana.  The court asked for briefs from the parties and took the matter under

advisement.  The State conditionally offered State's exhibit 3 after the trial court asked for briefs from the parties, but the court withheld a final ruling until it had had an opportunity to determine admissibility.  The trial court did not directly rule on the marijuana's admissibility, but it ultimately found appellant guilty of possession of marijuana and unlawful carrying of a weapon.

The specified intent behind H.B. 1325 was for the "state [to] have primary regulatory authority over the production of hemp in this state."  *Id.* § 2, 2019 TEX. Sess. Law Serv. at 2084–85 (codified at TEX. AGRIC. CODE ANN. § 121.002).  Pursuant to H.B. 1325, hemp is now defined as follows:

> In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta–9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

*Id.* at 2085 (codified at TEX. AGRIC. CODE ANN. § 121.001).  In addition, H.B. 1325 amended the Texas Controlled Substances Act to remove hemp from the definition of marijuana.  *Id.* § 8, 2019 Tex. Sess. Law Serv. at 2099–2100 (codified at TEX. HEALTH & SAFETY CODE ANN. § 481.002).

Therefore, the question here is whether the amended definition of marijuana applies to prosecutions for possession of marijuana offenses committed prior to H.B. 1325's enactment but prosecuted, as appellant's case was, after its effective date.  Appellant argues that H.B. 1325 should apply to possession of marijuana offenses committed before June 10, 2019, and in support he cites the doctrine of abatement

–3–

(a common law rule of statutory construction) and the legislative history of H.B. 1325, among other arguments. According to appellant, the State failed to prove he possessed illegal marijuana (as opposed to legal hemp) because it did not introduce evidence of THC concentration of more than 0.3 percent, pursuant to H.B. 1325. The State responds that the plain language of H.B. 1325—read in light of the Code Construction Act—shows that it applies only to offenses committed after it took effect. We agree with the State.

"When construing a statute, our dominant consideration is to ascertain the intention of the legislature." *Irving Fireman's Relief & Ret. Fund v. Sears*, 803 S.W.2d 747, 750 (Tex. App.—Dallas 1990, no writ). "The intent of the legislature is found in the language of the statute, the legislative history of the statute, and the context of the entire law within which the statute is located." *Id*. "The legislature is presumed to have acted with full knowledge of the existing laws, unless a contrary intent is clearly demonstrated." *Id*. Moreover, "[o]ur interpretation of the statute must be fair, rational, reasonable, and consistent with the legislative intent." *Id*.

The Code Construction Act, Chapter 311 of the Texas Government Code, provides a set of guidelines and construction aids we may use in construing Texas statutes. *See Lee v. Mitchell*, 23 S.W.3d 209, 212 (Tex. App.—Dallas 2000, pet. denied) (court may look to Code Construction Act to provide guidance in construing statute). It applies to the construction of all provisions in both the Agriculture Code and the Health and Safety Code unless otherwise expressly noted. *See* TEX. AGRIC.

CODE ANN. § 1.002 ("The Code Construction Act (Chapter 311, Government Code) applies to the construction of each provision in this code, except as otherwise expressly provided by this code."); TEX. HEALTH & SAFETY CODE ANN. § 1.002 ("Chapter 311, Government Code (Code Construction Act), applies to the construction of each provision in this code except as otherwise expressly provided by this code."). Under section 311.022 of the Government Code, statutes are presumed prospective in their operation "unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022; *see also State v. Fid. & Deposit Co*., 223 S.W.3d 309, 311 (Tex. 2007) (per curiam) (citing TEX. GOV'T CODE ANN. § 311.022). H.B. 1325 does not contain an express retroactivity clause and it does not otherwise expressly provide for retroactive application—an indication the Legislature intended it to apply prospectively to offenses committed after it took effect. *See* TEX. GOV'T CODE ANN. § 311.022; *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012) ("We generally presume that statutes are prospective unless they are expressly made retroactive.") (citing TEX. GOV'T CODE ANN. § 311.022 and *State v. Fid. & Deposit Co*, 223 S.W.3d at 311–12).

A recent decision offers some guidance. In *Childress v. State*, No. 06-19-00125-CR, 2020 WL 697903 (Tex. App.—Texarkana, Feb. 12, 2020, no pet.) (mem. op., not designated for publication), the defendant was charged with unlawful carrying of a weapon based on an underlying criminal offense of possession of marijuana—with an alleged offense date of on or about October 31, 2017. *Id*. at *3.

–5–

The defendant's argument on appeal was that the testimony of the officer who made the stop was insufficient to show the substance in the defendant's possession was marijuana. *Id*. The court affirmed the conviction. *Id*. at *4. In a footnote, the court observed that the defendant also argued, based on "recent changes in the law" (i.e., H.B. 1325), that there was insufficient evidence to show the substance met the definition of marijuana under the Health and Safety Code and the Agriculture Code. *Id*. at *4 n.6. The court swiftly rejected this argument, stating: "We need not address this argument because, when the offense was alleged to have occurred, the Texas Health and Safety Code did not exclude 'hemp' from the definition of mari[j]uana." *Id*.

The plain language of H.B. 1325 reinforces the conclusion that it applies prospectively because there are directives in the bill calling for future action to develop a new regulatory scheme to enforce it. For example, H.B. 1325 directs the Texas Department of Agriculture, after consulting with the governor and the attorney general, to "develop a state plan to monitor and regulate the production of hemp in this state." H.B. 1325, § 2, 2019 Tex. Sess. Law Serv. at 2085 (codified at TEX. AGRIC. CODE ANN. § 121.003). As part of the "state plan," H.B. 1325 mandates the department adopt rules that will "prescribe sampling, inspection, and testing procedures . . . to ensure that the delta-9 tetrahydrocannabinol concentration of hemp plants cultivated in this state is not more than 0.3 percent on a dry weight basis[.]" *Id*. at 2086 (codified at TEX. AGRIC. CODE ANN. § 122.051(b)). The bill also requires

–6–

the Texas Department of Agriculture to "adopt a schedule of sanctions and penalties for violations of this chapter and rules adopted under this chapter[.]" *Id*. at 2093 (codified at TEX. AGRIC. CODE ANN. § 122.401(a)). The full schedule of penalties and sanctions under this language for non-compliance is not listed; it must be created in the future. Finally, H.B. 1325 states that "a retailer may possess, transport, or sell a consumable hemp product, as defined by section 443.001, Health and Safety Code, as added by this Act, that becomes part of the retailer's inventory before rules under Section 443.051, Health and Safety Code, as added by this Act, become effective[.]" *Id*. § 11, 2019 Tex. Sess. Law Serv. at 2100. This language refers to hemp products that *may* become part of a retailer's inventory—yet another signal of intended prospective operation.

Appellant tries to sidestep these hurdles by citing the common law doctrine of abatement, which he argues should apply to marijuana offenses pending at the time of H.B. 1325's effective date. The common law recognized a presumption that repeal of a criminal or penalty statute abated all prosecutions thereunder that were not final. *See, e.g., United States v. Blue Sea Line*, 553 F.2d 445, 447 (5th Cir. 1977); *Rivera v. Joslin*, 202 F. App'x 804, 805 (5th Cir. 2006). However, "[t]his common law rule of abatement may be modified by a specific savings clause in the repealing legislation or by a general savings statute limiting the effect of repeals." *Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1998). H.B. 1325 does not contain a specific savings clause, but the Code Construction Act contains general savings provisions

that control if the legislation does not contain a specific savings clause. *See* TEX.

GOV'T CODE ANN. § 311.031; *see also Ex parte Mangrum*, 564 S.W.2d 751, 755

(Tex. Crim. App. [Panel Op.] 1978) (general savings clause inapplicable when

Legislature provides a "specific savings clause"); *State v. Lewis*, 918 S.W.2d 557,

559 (Tex. App.—Dallas 1996, no pet.) (specific enabling legislation supersedes §

311.031(b)). Section 311.031 provides in part:

> (a) Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:
>
>> (1) the prior operation of the statute or any prior action taken under it;
>>
>> (2) any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;
>>
>> (3) any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal; or
>>
>> (4) any investigation, proceeding, or remedy concerning any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
>
> (b) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

TEX. GOV'T CODE ANN. § 311.031(a), (b).

Appellant relies on section 311.031(b) to argue that H.B. 1325 "dramatically

changes the potential punishment" for the possession of marijuana in Texas with

0.3% THC "by reducing the punishment from 180 days to zero," and that "[o]n a fundamental level, total decriminalization is an absolute reduction in punishment." He also argues that "there is no principled reason to treat the two concepts differently in this context."

But closer examination of the bill undercuts appellant's argument. The preamble to H.B. 1325 states it is an act "relating to the production and regulation of hemp; requiring occupational licenses; authorizing fees; creating criminal offenses; [and] providing civil and administrative penalties." H.B. 1325, preamble, 2019 Tex. Sess. Law Serv. at 2084. The preamble says nothing about reducing penalties for *existing* criminal offenses; indeed, it previews that the bill is "creating criminal offenses." *See id.*; *see also* TEX. GOV'T CODE ANN. § 311.023(7) (providing that "[i]n construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider" the "title (caption)" and "preamble"). In fact, the text of H.B. 1325 establishes new offenses and penalties for violating its terms. For example, it is now a third-degree felony to forge a shipping certificate or cargo manifest issued under H.B. 1325. H.B. 1325, § 2, 2019 Tex. Sess. Law Serv. at 2087 (codified at TEX. AGRIC. CODE ANN. § 122.055(d)). If a person transports hemp originating in this state without possessing a shipping certificate or cargo manifest, they commit a misdemeanor offense punishable by a fine of not more than $1,000. *Id.* at 2092–93 (codified at TEX. AGRIC. CODE ANN. §§ 122.356, 122.360). Moreover, H.B. 1325 does not reduce the punishment or penalty for possession of

marijuana offenses. Appellant was charged with the possession of marijuana in an amount less than two ounces, a class B misdemeanor. The punishment for that offense, both before and after H.B. 1325 was enacted, remains the same: up to 180 days in jail and/or a fine not to exceed $2,000. TEX. HEALTH & SAFETY CODE ANN. § 481.121; TEX. PENAL CODE ANN. § 12.22.

By amending the definition of marijuana to exclude hemp, the Legislature narrowed the scope of what is now considered illegal marijuana. The Legislature did not reduce the punishment or penalty range for the offense of possession of marijuana. Therefore, according to its plain language, H.B. 1325 is not a penalty-reducing statute that falls under section 311.031(b) of the Code Construction Act. Instead, H.B. 1325 creates new offenses and leaves the punishment for possession of marijuana offenses unchanged.

Appellant also argues that the general savings statute does not apply to this case because "[l]egislative history" suggests the savings provision applies only in cases of "technical abatement," i.e., "the accidental triggering and application of the abatement doctrine to conduct the legislature still intends to prohibit." In addition, he contends "the legislature, having not included a specific savings provision in H.B. 1325, intended dismissal or acquittal in pending cases of marijuana possession absent proof of a THC concentration greater than 0.3%." This argument, however, is inconsistent with the plain language of the bill itself, and appellant cites no pertinent legislative history that supports his conclusion.

"Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006). "When attempting to discern this legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *see also Russell v. Wendy's Int'l, Inc.*, 219 S.W.3d 629, 636 (Tex. App.—Dallas 2007, no pet.) ("We read every word as if it were deliberately chosen and presume that omitted words were excluded purposefully.").

Appellant argues the Texas Legislature has "historically approved of abatement in cases of repeal and decriminalization of conduct," and he points to abating-like language found in the 1925 and 1974 revisions of the Texas Penal Code. He notes that the 1925 penal code contained the following provision: "**Repeal, effect of**.—The repeal of a law where the repealing statute substitutes no other penalty will exempt from punishment all persons who may have violated such repealed law, unless it be otherwise declared in the repealing statute." *See* Acts 1925, 39th Leg., R.S., ch 1, art. 14. The 1974 penal code similarly provided:

> Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that was an offense under the laws repealed by this Act and that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act.

*See* Acts 1973, 63rd Leg., R.S., ch. 399, § 6(b), eff. Jan. 1, 1974. Yet H.B. 1325 contains no language like this, or any language suggesting the Legislature intended for the doctrine of abatement to apply. Indeed, the very absence of such language from H.B. 1325 undermines appellant's argument. Had the Legislature intended for abatement and dismissal of pending proceedings, it could have said so in the text of the bill. It did not.[3]

Another argument appellant makes is that due process "requires application of the abatement doctrine when the legislature decriminalizes conduct." He maintains that due process does not afford us the latitude to accept the State's theory of legislative intent, and, thus, the only permissible construction of HB 1325 is one in which the Legislature intended abatement of pending proceedings. But appellant's premise is flawed because binding precedent *requires* us to ascertain legislative intent from the plain meaning of the words used in the statute; and the

---

[3] That H.B. 1325 did not decriminalize marijuana is reinforced by a joint letter to all Texas district and county attorneys signed on July 18, 2019 (less than a month-and-a-half after H.B. 1325 took effect) by the Governor, the Lieutenant Governor, the Speaker of the Texas House, and the Attorney General. Their letter states in part:

> Some have expressed concern that H.B. 1325 carved out hemp from the definition of a controlled substance, and defined hemp as having .3% or less THC concentration. H.B. 1325, §§ 1, 8, 86th Leg., R.S. (2019). Adopting this federal definition of hemp did not limit the prosecutorial options for prosecuting marijuana cases. Criminal cases may be prosecuted with lab tests or with the tried and true use of circumstantial evidence, a point some of you have already made clear in this context.

*See* https://gov.texas.gov/uploads/files/press/Letter_to_DAs.pdf. Though not legislative history, the uniqueness of this letter, its near contemporaneity with the legislation, its consistency with the text of the bill, its execution by the leaders of both chambers of the legislature and the Governor who signed the bill into law, and its recipients being the prosecutorial authorities throughout Texas reaffirms the text of the bill that the Legislature did not intend for dismissal of pending marijuana cases absent proof of THC content greater than 0.3%.

plain language of a statute is our surest guide to what the Legislature intended. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). Moreover, as we have already discussed, the plain language of H.B. 1325 does not evince any such legislative intent; and, more notably, the Legislature did not reduce the punishment or penalty range for the offense of possession of marijuana.

"The wisdom or expediency of the law is the Legislature's prerogative, not ours." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968); *see also City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 589 (Tex. 2018) (quoting *Smith*, 426 S.W.2d at 831). "We are not empowered to substitute what we believe is right or fair for what the Legislature has written, even if the statute seems unwise or unfair." *Ex parte Robbins*, 560 S.W.3d 130, 156 (Tex. Crim. App. 2016) (Newell, J. concurring) (citing *Boykin*, 818 S.W.2d at 785); *see also Parham v. Hughes*, 441 U.S. 347, 351 (1979). Appellant has not shown that due process concerns prevent us from following long-accepted rules of statutory construction. Accordingly, we conclude the changes enacted by the Legislature in H.B. 1325 apply prospectively to offenses committed after the date it took effect, June 10, 2019, and that, as a result, the trial court did not err in implicitly overruling appellant's objection. We overrule appellant's first issue.

## II.
### SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant contends (pursuant to his previous argument)

that the evidence is insufficient to show he possessed a usable quantity of marijuana pursuant to section 481.121 of the Health and Safety Code because the marijuana evidence (State's exhibit 3) was never admitted.

The evidence showed that on October 23, 2017, City of McKinney police officer Derek Stansell pulled appellant over for speeding. He stopped appellant's vehicle at Bradley and Louisiana streets, in McKinney, Collin County, Texas. Officer Stansell testified that when he approached appellant's car he detected "[a] strong odor of marijuana." Appellant told the officer he had a loaded 10-millimeter pistol in the center console. Officer Stansell had appellant exit the car, and he patted him down for officer safety. During the pat down, Stansell felt what he "believed was a small baggie of marijuana" in appellant's right pocket.[4] He did not immediately seize the marijuana and instead conducted a search (undertaken with appellant's consent) of appellant's car. Officer Stansell saw "marijuana shake," i.e., "[s]mall amounts of marijuana," on both seats and in the floorboard of the vehicle. He also found a backpack in the front seat of the car that contained a loaded AR-15 rifle. A Glock 10-millimeter pistol was in the vehicle's center console.

During the search, both Officer Stansell and the backup officer, Luis Moreno, the other witness called by the State, saw appellant (whose hands were by now handcuffed behind him) make a "furtive movement" that indicated he was trying to

---

[4] The officer initially testified on direct that he felt the marijuana in appellant's left pocket, but on cross-examination he clarified that it was appellant's right pocket.

–14–

move his hands around to reach his front pocket. Stansell believed appellant was trying to get to the marijuana to destroy it. Officer Moreno seized the marijuana. It was at this point during Officer Stansell's testimony on direct examination that the State offered the seized marijuana into evidence. When defense counsel objected to its admission, the trial court held the hearing concerning H.B. 1325 that we discussed previously, and then the trial resumed.

Following the hearing, further testimony from Officer Stansell showed that, after his arrest, appellant was transported to the McKinney Narcotics Unit where the marijuana was weighed, and that both the marijuana and the weapons were logged into evidence. The weight of the marijuana was 4.8 grams, according to Stansell. Officer Stansell testified that, based on his training and experience, this was a usable amount of marijuana. Prior to the hearing, he had also testified that he was trained to detect marijuana by both sight and smell. He testified on cross-examination that there was a "usable amount of marijuana," maybe enough for one or one-half "joints" or "bowls."

Officer Moreno testified that as a City of McKinney police officer he, too, was trained in detecting marijuana by sight and smell. He testified that when he removed the "baggie" from appellant's right pants pocket he realized—based on his training and experience—it was marijuana. He also testified that based on what he saw on the scene and his observation of it, it was a usable amount of marijuana. Officer Moreno further testified that he checked appellant's other pants pocket and

found approximately $4,000 in cash.

When determining whether the evidence is sufficient to support a conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a factfinder could have found the essential elements of the charged offense were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). The factfinder must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (citing *Jackson*, 443 U.S. at 319). We presume the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also defer to the factfinder's evaluation of the credibility and weight of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). This standard is the same for both direct and circumstantial evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

Under the Texas Health and Safety Code, a person commits an offense if the person "knowingly or intentionally possesses a usable quantity of mari[j]uana." TEX. HEALTH & SAFETY CODE ANN. § 481.121(a). What is a "usable quantity" is not statutorily defined, but the Texas Court of Criminal Appeals has stated that for marijuana to be a "usable amount," there must be "'an amount sufficient to be

–16–

applied to the use commonly made thereof.'" *Moore v. State*, 562 S.W.2d 226, 228 (Tex. Crim. App. 1977) (quoting *Pelham v. State*, 298 S.W.2d 171, 173 (Tex. Crim. App. 1957)). An officer's testimony is sufficient to establish a substance is marijuana. *See Deshong v. State*, 625 S.W.2d 327, 329–30 (Tex. Crim. App. [Panel Op.] 1981) ("The officer was permitted to testify, without objection, that the substance in the baggie was mari[j]uana."); *Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977) (noting that "[t]his Court has held that an experienced officer may be qualified to testify that a certain green leafy plant substance is mari[j]uana."); *Boothe v. State*, 474 S.W.2d 219, 221 (Tex. Crim. App. 1971) ("The testimony of these experienced officers in the narcotics division that the substance found in the building and in the automobile appeared to them to be mari[j]uana was sufficient for the jury to determine that it was mari[j]uana."); *Burch v. State*, No. 05-10-01389-CR, 2012 WL 2226456, at *7 (Tex. App.—Dallas June 18, 2012) (not designated for publication) (noting that an officer is competent to identify marijuana), *aff'd*, 401 S.W.3d 634 (Tex. Crim. App. 2013). Also, whether a particular amount of marijuana is a usable quantity can be proven by circumstantial evidence. *State v. Perez*, 947 S.W.2d 268, 271 n.6 (Tex. Crim. App. 1997).

Although the marijuana in this case was never formally admitted into evidence, the evidence is sufficient to show appellant possessed a usable quantity of marijuana. The evidence showed the marijuana weighed 4.8 grams, and both officers testified appellant possessed marijuana and that he possessed it in a usable

amount. Appellant has not cited, nor have we found, legal authority holding the evidence insufficient merely because seized marijuana was never formally admitted into evidence. Based on the record in this case, a rational trier of fact could have reasonably concluded the elements of the offense of possession of marijuana were established beyond a reasonable doubt. Thus, the evidence is sufficient to support appellant's conviction for possession of marijuana, and we overrule appellant's second issue.

### III.
### FIFTH AND EIGHTH AMENDMENTS

In his third issue, appellant argues the Fifth and Eighth Amendments of the U.S. Constitution prohibit punishing appellant for his conviction for possession of marijuana because (pursuant to the argument in appellant's first issue) the Legislature reduced the punishment for appellant's conduct to zero. Therefore, according to appellant, any punishment in excess of zero exceeded the statutory maximum penalty for appellant's conduct, constituted cruel and unusual punishment, and violated due process.

The State argues these sentencing issues were not preserved for appellate review, and we agree. The record shows appellant did not object to his sentence—nor did he raise a proportionality complaint—at the time the trial court sentenced him. Appellant also did not raise these issues in a motion for new trial. We conclude appellant's complaints were not preserved for appellate review. *See* TEX. R. APP. P.

–18–

33.1; *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.); *see also Sims v. State*, No. 05-18-00572-CR, 2019 WL 2266547, at *3 (Tex. App.—Dallas May 28, 2019, no pet.) (mem. op., not designated for publication); *Parramore v. State*, No. 05-03-00989-CR, 2004 WL 784911, at *1 (Tex. App.—Dallas March 29, 2004, no pet.) (mem. op., not designated for publication).

Furthermore, even if we overlooked the lack of preservation, the record shows appellant was charged with possession of marijuana in an amount less than two ounces, a Class B misdemeanor punishable by up to 180 days in jail and/or a fine not to exceed $2,000. TEX. HEALTH & SAFETY CODE ANN. § 481.121; TEX. PENAL CODE ANN. § 12.22. Appellant was also charged with unlawful carrying of a weapon, a class A misdemeanor punishable by up to one year in jail and/or a fine not to exceed $4,000. TEX. PENAL CODE ANN. §§ 12.21 46.02. The trial court found appellant guilty of both offenses. During the punishment hearing, defense counsel asked the court to sentence appellant to two days' confinement, with credit given for two days already served. The State requested a jail sentence of thirty days' confinement and forfeiture of the seized weapons. The trial court ultimately assessed punishment for each offense of twenty days' confinement in the county jail, a $500 fine, court costs, and it ordered forfeiture of the seized weapons.

"We give a great deal of discretion to a trial judge's determination of the appropriate punishment in any given case." *Foster v. State*, 525 S.W.3d 898, 911 (Tex. App.—Dallas 2017, pet. ref'd) (citing *Jackson v. State*, 680 S.W.2d 809, 814

(Tex. Crim. App. 1984)).  Generally, so long as the sentence is within the proper range of punishment, we do not disturb it on appeal.  *Id.*  Appellant fails to show how the trial court's assessment of punishment (which was at the lower end of the penalty ranges for both offenses) constituted an abuse of discretion.  *See id*.  We overrule appellant's third issue.

## IV.
### ARRAIGNMENT AND ENTERING A PLEA

In his fourth issue, appellant contends there was no trial for the offense of unlawful carrying of a weapon because he was not arraigned for and did not enter a plea to that offense.

Arguing that "[t]he proceedings below constituted a trial for the offense of Possession of Mari[j]uana only," appellant points to the following colloquy that occurred prior to opening statements:

> THE COURT:  Are you the same individual charged with the offense of possession of marijuana in the cause number I just read?
>
> THE WITNESS [DEFENDANT]:  Yes, Your Honor.
>
> THE COURT:  On August 15th, you came before the court and you were admonished as to the range of punishment, you waived formal arraignment and you entered a plea of not guilty.
>
> Do you recall that, sir?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  Do you persist in your plea of not guilty?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  Very good.  Have a seat.

The reporter's record is silent as to whether appellant entered a plea to the charge of unlawful carrying of a weapon.

"It is well settled in this state that a plea must be entered in every criminal case and if no plea is entered, the trial is a nullity, since there is no issue for the jury or the court." *Lumsden v. State*, 384 S.W.2d 143, 144 (Tex. Crim. App. 1964). But rule of appellate procedure 44.2(c)(4) states we are required to presume "that the defendant pleaded to the indictment or other charging instrument" unless the matter was "disputed in the trial court" or "the record affirmatively shows the contrary." TEX. R. APP. P. 44.2(c)(4); *Lincoln v. State*, 307 S.W.3d 921, 922 (Tex. App.—Dallas 2010, no pet.) (citing rule 44.2(c)(4) and stating that "[a] second presumption operates in these circumstances as well: unless the record affirmatively shows the contrary, our appellate rules require us to presume [the defendant] pleaded to the indictment."); *see also Harvey v. State*, 605 S.W.3d 812, 815 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Lincoln* and applying rule 44.2(c)(4) presumption); *Washington v. State*, 550 S.W.3d 340, 341–42, (Tex. App.—San Antonio 2018, no pet.) (same); *Garcia v. State*, No. 13-09-00650-CR, 2010 WL 3279494, at *1 (Tex. App.—Corpus Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication) (same). "A silent record will not suffice as an affirmative showing and thus will not overcome presumptions of regularity." *Lincoln*, 307 S.W.3d at 923 (citing *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984)); *see also Harvey*, 605 S.W.3d at 815; *Washington*, 550 S.W.3d at 341; *Garcia*, 2010 WL

–21–

3279494, at *2.

The final judgment of conviction in the unlawful carrying of a weapon case, 05-19-01059-CR, recites that "[t]he defendant was arraigned or waived arraignment and pleaded Not Guilty." We also note that the docket sheet in the clerk's record documents two occasions when appellant pleaded not guilty to the offense of unlawful carrying of a weapon. First, in a pretrial proceeding on August 15, 2019, titled "Arraignment Hearing," the trial court recorded in a docket entry that appellant was admonished, waived formal arraignment, and pleaded not guilty. Second, on August 29, 2019, the trial court recorded in a docket entry that the case was called for trial, both sides announced ready, appellant was admonished, waived formal arraignment, and pleaded not guilty. The reporter's record of the trial, moreover, makes it clear appellant contested the charge of unlawful carrying of a weapon. Defense counsel objected, for example, when the State offered the firearms into evidence, counsel questioned witnesses about the legality of possessing firearms, and he asked the trial court to find appellant "not guilty . . . in both cases, the marijuana and the UCW."

"Recitals in a judgment create a 'presumption of regularity and truthfulness,' and these recitals are binding unless there is direct proof of their falsity." *Lincoln*, 307 S.W.3d at 922 (quoting *Breazeale*, 683 S.W.2d at 450–51); *see also Harvey*, 605 S.W.3d at 816; *Fields v. State*, 507 S.W.3d 333, 335–36 (Tex. App.—Houston [1st Dist.] 2016, no pet.). When, as in this case, a judgment contains a recital, the

–22–

accused bears the burden of proving that the contrary is true. *Lincoln*, 307 S.W.3d at 924 (quoting *Breazeale*, 683 S.W.2d at 451); *see also State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Harvey*, 605 S.W.3d at 816.

We presume the trial court's written recital in the final judgment of conviction that appellant pleaded not guilty to unlawful carrying of a weapon is truthful. *See Guerrero*, 400 S.W.3d at 583; *Breazeale*, 683 S.W.2d at 450–51; *Lincoln*, 307 S.W.3d at 922; *Harvey*, 605 S.W.3d at 816. The record supports the presumption of regularity and truthfulness. *See Breazeale*, 683 S.W.2d at 450–51; *Lincoln*, 307 S.W.3d at 923–24; *Harvey*, 605 S.W.3d at 816. Appellant has failed to carry his burden of proving the trial court's recital in the judgment of conviction is contrary to the truth. *See Lincoln*, 307 S.W.3d at 924 (quoting *Breazeale*, 683 S.W.2d at 451); *Harvey*, 605 S.W.3d at 816. We therefore overrule appellant's fourth issue.

We affirm the judgment of conviction.


/Lana Myers/
LANA MYERS
JUSTICE


Publish
TEX. R. APP. P. 47.2(b)
191057F.P05

–23–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TAVARIO JERMAINE SMITH, Appellant

No. 05-19-01057-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1, Collin County, Texas
Trial Court Cause No. 001-87850-2018.
Opinion delivered by Justice Myers. Justices Nowell and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 31st day of December, 2020.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TAVARIO JERMAINE SMITH,
Appellant

No. 05-19-01059-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1, Collin County, Texas Trial Court Cause No. 001-87851-2018.
Opinion delivered by Justice Myers. Justices Nowell and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 31st day of December, 2020.